# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1010

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Thomas A. Hanny; | * | |
| Thomas A. Hanny, M.D., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 24, 2007
Filed: December 12, 2007

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Dr. Thomas Hanny pleaded guilty to conspiring to distribute controlled substances outside the course of normal medical practice and engaging in a monetary transaction over $10,000 derived from the proceeds of this activity, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 1957 respectively. The district court[1] sentenced Hanny to 33 months' imprisonment. Hanny appeals, arguing that the district court incorrectly calculated his Guidelines range by improperly applying a sentencing enhancement for

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court, Northern District of Iowa.

distributing controlled substances through mass-marketing by means of an interactive computer service. We affirm.

## I. *Background*

Dr. Thomas Hanny, a physician licensed in Connecticut, ended his 30-year career as a surgeon in October 2003. Following his retirement, Hanny received an offer to work for Pharmacom, a company that sold prescription drugs over the Internet. Pharmacom wanted Hanny to authorize prescriptions to its Internet customers. Hanny questioned the business's legality and consulted an attorney. The attorney, although disclaiming any specialized knowledge about Internet prescriptions, also expressed doubt about the business's legitimacy. Despite his initial misgivings, and his attorney's doubts, Hanny began working for Pharmacom in early 2004. Hanny did not seek additional advice from an attorney more familiar with the Internet prescription business.

Pharmacom's business model was simple. The company sponsored a website that allowed customers to order controlled substances over the Internet. The Internet customers selected and paid for the controlled substances online using credit or debit cards. Once the customers' payments were verified, the orders were sent to participating physicians, such as Hanny, for review. To authorize the sale, the physician would add his electronic signature to the order. The physicians were not required to physically examine the patients as part of their order review. After the electronic order was approved by a physician, the order would then be sent to a participating pharmacy to fill the prescription. While working for Pharmacom, Hanny authorized over 2,400 prescriptions. Hanny kept a portion of each sale, earning approximately $14,600 for his services. During his time with Pharmacom, Hanny never examined any of the patients who sought prescriptions. Law enforcement became aware of Pharmacom's operations and shut down the company in 2004.

After Pharmacom ceased operations, Hanny began working for Jive,[2] another company that illegally sold prescription drugs over the Internet. Hanny's responsibilities at Jive were very similar to his responsibilities at Pharmacom; Hanny approved prescription requests based on a questionnaire completed by the customer. Hanny never reviewed the customers' medical records. While working at Jive, Hanny authorized the dispensing of at least 110,110 dosage units of Schedule III controlled substances and at least 880,590 dosage units of Schedule IV controlled substances. For his services to Jive, Hanny earned approximately $42,700.

In January 2005, the Missouri Board of Medicine contacted Hanny and informed him that his actions as a Jive employee, as it related to Missouri customers, constituted the illegal practice of medicine in Missouri. The letter demanded that Hanny cease and desist, but Hanny disregarded the communication and continued prescribing for Jive until April 2005.

The United States charged Hanny with conspiring to distribute controlled substances outside the course of normal medical practice and engaging in a monetary transaction over $10,000 derived from the proceeds of this activity in violation of 21 U.S.C. § 846 and 18 U.S.C. § 1957 respectively. Hanny pleaded guilty to two counts of conspiracy to distribute and one count of engaging in an illegal monetary transaction. After accepting his guilty plea, the district court sentenced Hanny to 33 months' imprisonment.

In reaching Hanny's sentence, the court first determined Hanny's offense level for the drug charges. The court looked to U.S.S.G. § 2D1.1 and applied a base offense level of 20. The court determined that Hanny's drug offense involved the distribution of a controlled substance through mass-marketing by means of an interactive computer service and, therefore, applied a two-level enhancement to Hanny's base

[2]Jive also operated under the names Pill Works and Pill Network.

offense level under § 2D1.1(b)(5). After adding the money laundering offense and applying several other adjustments,[3] both upward and downward, the court set Hanny's total offense level at 19 and his criminal history classification at Category I, making Hanny's Guidelines range 30 to 37 months' imprisonment. The court departed downward from the advisory range after the government filed a substantial assistance motion under U.S.S.G. § 5K1.1, resulting in a final advisory Guidelines range of 27 to 33 months. The court heard arguments regarding the appropriateness of granting a variance from the Guidelines but found that no § 3553(a) factor warranted a variance. After denying the variance, the court sentenced Hanny to 33 months' imprisonment.

Hanny appeals the applicability of the § 2D1.1(b)(5) upward adjustment that set his initial offense level. He argues that had the adjustment not been applied his pre-departure Guidelines range would have been 27 to 33 months, and the court would have sentenced him to a shorter sentence after granting the 5K1.1 departure.

## II. *Discussion*

The sole issue raised by this appeal is whether the record evidence supports the district court's application of U.S.S.G. § 2D1.1(b)(5). We review the district court's interpretation and application of the Sentencing Guidelines de novo. *United States v. Holthaus*, 486 F.3d 451, 454 (8th Cir. 2007).

In establishing a base offense level, the Guidelines require a two-level enhancement if the defendant's crime involved the distribution of any controlled substance "through mass-marketing by means of an interactive computer service." U.S.S.G. § 2D1.1(b)(5).[4] Neither we nor any other appellate court have had the

---

[3]None of these adjustments are at issue in this appeal.

[4]Subsection (b)(5) has not been construed by an appellate court. However, section 2B1.1 contains a similar enhancement for theft and fraud crimes. Under

occasion to address this Guidelines section; however, the application notes to the Guidelines provide some guidance to its use. The application notes define "mass-marketing by means of interactive computer service" as "the solicitation, by means of an interactive computer service, of a large number of persons to induce those persons to purchase a controlled substance." U.S.S.G. § 2D1.1(b)(5), cmt. n.22. "Interactive computer service" means "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." *See* U.S.S.G. § 2D1.1(b)(5), cmt. n.22; 47 U.S.C. § 230(f)(2).

Hanny's contention is that Jive's internet activities do not justify an application of subsection (b)(5). It is undisputed that the trial court properly imputed Jive's actions to Hanny when considering the application of this subsection. As a conspirator, Hanny is accountable for the actions of his co-conspirators at Pharmacom and Jive who illegally sold controlled substances. *United States v. Brown*, 148 F.3d 1003, 1008 (8th

---

subsection 2B1.1(b)(2)(A)(ii), a court must apply a two-level enhancement if the defendant committed a property offense through "mass-marketing." Mass-marketing is defined, in part, as "a plan, program, promotion, or campaign, that is conducted through solicitation by . . . the Internet . . . to induce a large number of persons to . . . purchase goods or services." U.S.S.G. § 2B1.1(b)(2)(A)(ii), app. n.4. Hanny cites to *United States v. Pirello*, 255 F.3d 728 (9th Cir. 2001), addressing § 2B1.1(b)(2)(A)(ii) to support his contention that to prove solicitation, the government must show the defendant affirmatively placed an ad on the Internet or sent spam emails to promote the sale of the illegal items. However, this is not the holding of *Pirello*; in fact *Pirello* did not address what facts are necessary before solicitation is proven. However, *Pirello* is helpful to the present case in that it provides an example of a defendant who is guilty of solicitation by the Internet. In *Pirello*, the defendant defrauded purchasers by placing a classified ad on the Internet offering goods for sale that he did not own. *Id*. at 730. The court stated that "by placing a classified ad on the Internet, Pirello was able to solicit funds instantaneously and continuously from over 200 million individuals worldwide." *Id*. at 731.

Cir. 1998) (stating that a defendant convicted of conspiracy is properly held accountable for all reasonably foreseeable acts and omissions of any co-conspirator taken in furtherance of that conspiracy); U.S.S.G. § 1B1.3(a)(1)(B).

This appeal turns on the interpretation of U.S.S.G. § 2D1.1(b)(5). We do not find the Guidelines ambiguous. The application notes provide examples of scenarios that do and that do not qualify as solicitation for purposes of § 2D1.1(b)(5). The notes clearly state that subsection (b)(5) applies to a defendant who "operated a web site to promote the sale" of a controlled substance. U.S.S.G. § 2D1.1(b)(5), cmt. n.22. The example in note 22 makes clear that the subsection does not apply if the only use of the interactive computer service is for the parties to communicate with each other in furtherance of the offense. *Id*.

Hanny interprets the first example in the application notes as requiring affirmative proof that Jive used the website to promote the sale of the controlled substance. According to Hanny's interpretation, subsection (b)(5) only applies in cases where the government shows that a defendant placed an ad or sent emails to generate sales. Hanny argues that any other interpretation would render the use of the words "promote" and "solicit" in the mass-marketing definition superfluous. Hanny's argument mainly rests on the idea that each word in a sentence should be given effect. Hanny also relies on the dictionary definitions of "solicitation."

The government, on the other hand, asserts that the application notes support its interpretation of the Guidelines. The government contends that interactive websites that are generally accessible to the public, by their very nature, promote the website's subject matter. According to the government, this subsection exists to combat the increasing role interactive computer services play in the realm of drug trafficking.

Subsection (b)(5) was added to the Guidelines in 2004 after the Sentencing Commission "identified use of an interactive computer service as a tool providing

easier access to illegal products." U.S.S.G. app. C., amend. 667, reason for amend. ¶ 2. According to the Sentencing Commission, an interactive computer service provides criminals an easier method to market their products and makes it more difficult for law enforcement to uncover the crime and punish the offenders. *Id.*

We hold that the government's proof sufficiently established a factual basis for imposition of the enhancement in this case. A public, interactive website reachable by an ordinary web search engine is, at the least, a billboard on the information superhighway. As operated, the Jive site not only allowed the general public to read the products offered for sale, but the site also allowed visitors to actively shop for, select, and purchase controlled substances. Operation of an illegal internet pharmacy of this variety through an interactive website is sufficient conduct to warrant the application of U.S.S.G. § 2D1.1(b)(5).

We are careful, however, to note that the mere use of a website is not sufficient to trigger this enhancement. As correctly pointed out by Hanny, a person "solicits" when he entices another to take an action. The operation of an interactive website devoted to the illegal sale of controlled substances that is freely accessible to all members of the public is sufficiently enticing to constitute solicitation. Offering controlled substances for sale was not a minor part of Jive's website. It was the very reason the site existed. Under these facts, we cannot say that the district court erred in applying the two-level mass-marketing enhancement to Hanny's base offense level.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

———————————————