# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3138

_____

United States of America,

        Appellee,

v.

Howard O. Kieffer,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of North Dakota.
\*
\*
\*

_____

Submitted: May 14, 2010
Filed: September 13, 2010

_____

Before RILEY, Chief Judge, LOKEN and MURPHY, Circuit Judges.

_____

RILEY, Chief Judge.

Howard Kieffer, an attorney-impersonator, misled federal courts across the country into admitting him to practice law within their respective jurisdictions, including the Eighth Circuit Court of Appeals. Although he was not a lawyer, Kieffer collected over $150,000 in "legal fees" for "representing" persons accused or previously convicted of federal crimes. After a jury found Kieffer guilty of mail fraud, 18 U.S.C. § 1341, and making false statements, 18 U.S.C. § 1001, the district

court[1] sentenced Kieffer to 51 months in prison. Kieffer appeals, alleging a myriad of trial and sentencing errors. We affirm.

## I. BACKGROUND
### A. Facts[2]

Kieffer is not an attorney. Kieffer never obtained a college degree and has never attended law school or passed a bar exam. Kieffer is a felon with a history of dishonesty, including convictions for petty and grand theft, passing bad checks, and stealing cable TV. In the late 1980s, Kieffer pled guilty in the United States District Court for the Central District of California to claiming over $150,000 in federal tax refunds to which he was not entitled. See generally Kieffer v. United States, 995 F.2d 231, 1993 WL 181360 (9th Cir. May 27, 1993) (unpub. mem.).

After release from federal prison, Kieffer settled in Santa Ana, California, and styled himself the "Executive Director" of "Federal Defense Associates." In 1997, Kieffer appeared as counsel of record in United States v. Olsen, 108 F.3d 340 (9th Cir. Feb. 14, 1997) (unpub. table disp.). It is unclear whether Kieffer fraudulently gained admission to practice in the Ninth Circuit Court of Appeals before participating in the Olsen appeal.

In the ensuing years, Kieffer boasted specialized training in the policy, practices, and regulations of the United States Bureau of Prisons (BOP). He operated websites with legal themes, most notably www.boplaw.com and www.guiltyornot.com, and attended conferences sponsored by the federal government

---

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

[2]We recite the facts in the light most favorable to the jury's verdicts. See United States v. Chavez-Alvarez, 594 F.3d 1062, 1064 (8th Cir. 2010).

under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A. At the CJA conferences, Kieffer left his fellow attendees with the impression he was licensed to practice law.

### 1. District of Minnesota

In April 2005, Kieffer attended a CJA conference in Santa Monica, California, where he acquainted himself with two Minnesota attorneys, Steve Bergeson and Rick Mattox. Bergeson and Mattox thought Kieffer was an expert in federal sentencing and related matters. Bergeson believed Kieffer was licensed to practice law, because "[n]obody goes to these things unless you're an attorney [or] a judge."

In 2006, Bergeson, Mattox, and another attorney, Howard Bass, referred to Kieffer existing or prospective clients who were parties in the United States District Court for the District of Minnesota. Bergeson asked Kieffer for help with a re-sentencing of Donald Sturgis in the district court. Having "learned from [Bergeson] that [Kieffer] had done a good job for . . . [Sturgis]," Mattox referred Peter Noe's mother, Natasha Caron, to Kieffer for help with Noe's habeas corpus application. Bass recommended Kieffer to Kenneth Henderson, the husband of Denise Henderson (Henderson), for her habeas corpus application.

Representing Sturgis, Noe, and Henderson presented a problem for Kieffer, because he was not admitted to practice law in the District of Minnesota. For example, to obtain admission on a *pro hac vice* basis, Kieffer was required to attest he was "currently a member in good standing of [a] United States District Court," which he was not. Kieffer, therefore, devised a scheme to gain *pro hac vice* admission to the District of Minnesota, and general admission to other federal courts, in order to continue charging "fees" to unwitting criminal defendants and their family members on the pretense Kieffer was an attorney. In the interim, Bergeson helped Kieffer file a re-sentencing memorandum for Sturgis and a 28 U.S.C. § 2255 motion for Henderson. Bergeson characterized the memorandum as "good" and billed the United States under the CJA Act for the hours Kieffer spent drafting it. Bergeson and Kieffer

"jointly" filed the § 2255 motion, asserting Kieffer's application for *pro hac vice* admission was "pending."

### 2. Ninth Circuit

In January 2007, after an unsuccessful attempt to obtain a certificate of good standing, Kieffer applied for general admission to the Ninth Circuit. Citing his participation in <u>Olsen</u>—Kieffer claimed he had participated in oral argument and was paid for his services under the CJA Act—Kieffer asserted he was admitted to the Ninth Circuit approximately "13 or 14 years" previously. In his application, Kieffer swore to "conduct myself as an attorney and counselor of the court, uprightly and according to the law." A member of the Ninth Circuit bar vouched for Kieffer. <u>See</u> Fed. R. App. P. 46. Based upon these false representations, the Ninth Circuit admitted Kieffer on February 12, 2007.

### 3. District of North Dakota

Around March 8, 2007, Kieffer attended another CJA conference, this time in Phoenix, Arizona, which focused on advanced federal sentencing issues. Kieffer met Chad McCabe, a North Dakota lawyer. McCabe believed Kieffer was a fellow attorney, because McCabe thought only experienced CJA panel members attended the conference. Kieffer had an official name tag, promoted himself as knowledgeable about federal sentencing matters, and drew attention to one of his websites.

Less than a week after the Phoenix conference, Kieffer called McCabe and asked whether McCabe would support Kieffer's application for general admission to the District of North Dakota. McCabe agreed, and Kieffer sent McCabe a nearly complete application, as well as a check payable to the District of North Dakota for the required admission fee.

At the time, "[a]ny member of the bar of . . . any United States Circuit Court of Appeals, or of any District Court of the United States" was eligible for admission to

the District of North Dakota. See D.N.D. Local R. 79.1. The District of North Dakota's application required a member of its bar to "personally vouch for [the applicant]'s qualifications, integrity and good character." As in other federal jurisdictions, the District of North Dakota's attorney admission system was based on trust. The District of North Dakota did not request a certificate of good standing from applicants or otherwise verify their credentials.[3]

In his application, Kieffer swore he was (1) admitted to the Ninth Circuit; (2) admitted to the Central District of California; and (3) graduated with a Juris Doctor degree from the Antioch Law School in Washington, DC. McCabe signed Kieffer's pre-prepared application—thereby attesting to Kieffer's qualifications—and hand-delivered it to the court. On March 16, 2007, Kieffer was admitted to practice in the District of North Dakota.

### 4.        Subsequent Court Admissions

Kieffer used his District of North Dakota admission for *pro hac vice* and general admissions to federal courts across the country. In April 2007, Kieffer was admitted *pro hac vice* to the District of Minnesota, for the Noe and Henderson post-conviction matters, and granted general admission to the United States Court of Appeals for the Fourth Circuit. In October 2007, Kieffer was admitted to the United States District Court for the District of Colorado, where he subsequently "represented" Gwen Bergman at a mental competency hearing and a bench trial on murder-for-hire charges.[4] In January 2008, Kieffer was admitted *pro hac vice* to the District of

---

[3]Kieffer's fraud exposed systemic weaknesses in the attorney admissions systems of some federal courts. At Kieffer's trial, the Clerk of Court for the District of North Dakota testified he now requests certificates of good standing and conducts background checks on all applicants for admission.

[4]Kieffer's representation of Bergman generated significant litigation, including additional federal criminal charges against Kieffer. See generally United States v. Bergman, 599 F.3d 1142 (10th Cir. 2010) (remanding for a new competency hearing);

Minnesota to "represent" Joel Wells, an accused child pornographer. In April 2008, Kieffer was admitted *pro hac vice* to the United States District Court for the Western District of Missouri to represent David Reed in his habeas corpus application. In May 2008, Kieffer was admitted to the Eighth Circuit.

In each application for admission, Kieffer certified he was admitted to practice in the District of North Dakota. In most of the applications, an attorney vouched for Kieffer under oath. For example, Bergeson and Mattox attested Kieffer was "an attorney admitted to practice and currently in good standing in the [District of North Dakota]." No one attempted to verify Kieffer's credentials.[5] From his fraudulent scheme, Kieffer collected over $150,000 in "fees"—$27,000 "representing" Wells, $65,750 "representing" Bergman, $15,000 "representing" Reed, $20,000 "representing" Noe, and $25,000 "representing" Henderson.

### 5. Discovery of Scheme

On May 31, 2008, Kieffer's scheme collapsed. Wells, a dissatisfied "client," wrote the District of North Dakota's Clerk of Court. Wells alleged Kieffer was not an attorney and asked the Clerk of Court to investigate. According to Wells, the Central District of California had no record of Kieffer's admission and the Antioch Law School's former registrar confirmed Kieffer never attended that now-defunct institution.

---

United States v. Kieffer, No. 09-410, 2010 WL 924060 (D. Colo. Mar. 10, 2010) (discussing criminal charges). See also Bergman v. Kieffer, No. 08-2334, 2008 WL 5453771 (D. Colo. Dec. 31, 2008), rev'd, Bergman v. Kieffer, 335 F. App'x 720 (10th Cir. 2009), on remand to Bergman v. Kieffer, 2009 WL 2858096 (D. Colo. Sept. 2, 2009).

[5]Kieffer's application to the District of Colorado required him to disclose the "[t]erritory or District of Columbia" from which he received his law license. Kieffer wrote "N/A." When the District of Colorado's attorney services coordinator called Kieffer for an explanation, Kieffer said he was licensed in "DC."

On June 5, 2008, the Chief Judge of the District of North Dakota ordered Kieffer to show cause, demanding proof of his graduation from the Antioch Law School and certificates of good standing from the Ninth Circuit, the Central District of California, and a state bar. Kieffer tried to obtain a certificate of good standing from the Ninth Circuit, but the Ninth Circuit denied Kieffer's request and instituted its own show cause proceedings against him. Kieffer then asked the District of North Dakota for a certificate of good standing, ostensibly to satisfy the Ninth Circuit, but the District of North Dakota denied the request.

On July 2, 2008, Kieffer responded to the Chief Judge's show cause order. Kieffer admitted he did not have a law degree and was not a member of the Central District of California or any state bar. The Chief Judge found Kieffer's application for admission contained false statements, suspended his license to practice in the district court, pending further proceedings, and referred Kieffer's conduct to the United States Attorney. On August 7, 2008, Kieffer tendered his resignation from the District of North Dakota bar, which the Chief Judge refused. On August 11, 2008, the Chief Judge disbarred Kieffer and notified the American Bar Association's National Discipline Data Bank. Other federal courts then revoked Kieffer's licenses to practice law.

### B.     Prior Proceedings

In December 2008, a grand jury in the District of North Dakota returned a two-count superseding indictment against Kieffer. Count 1 alleged mail fraud, in violation of 18 U.S.C. § 1341. Count 2 alleged false statements in a matter within the jurisdiction of the judicial branch, in violation of 18 U.S.C. § 1001. After a two-day trial, a jury found Kieffer guilty as charged.

At Kieffer's sentencing, the district court calculated Kieffer's advisory United States Sentencing Guidelines (U.S.S.G. or Guidelines) range to be 51 to 63 months of imprisonment (total offense level of 23, criminal history category of II). After

considering all of the factors at 18 U.S.C. § 3553(a), the district court sentenced Kieffer to 51 months and ordered him to make over $150,000 in restitution for the benefit of Wells, Bergman, Reed, Noe, and Henderson. Kieffer appeals his convictions and sentence.

## II. DISCUSSION

Kieffer advances eight arguments for reversal. The first four arguments attack his convictions, and the last four concern his sentence. We examine each argument, in turn.

### A. Convictions

#### 1. Acts Committed Outside the District of North Dakota

In a motion in limine, Kieffer asked the district court to exclude evidence of "any . . . alleged . . . acts, which did not take place in the District of North Dakota." Kieffer argued introduction of such evidence would violate Fed. R. Evid. 404(b). The district court denied the motion, reasoning evidence of Kieffer's actions in other jurisdictions was "the very conduct which constitutes the scheme with which he has been charged" and thus intrinsic to the superseding indictment.

The district court did not abuse its discretion. See United States v. Hall, 604 F.3d 539, 543 (8th Cir. 2010) (standard of review). Kieffer's fraudulent scheme was national in its scope. From coast to coast, Kieffer deceived lawyers and federal courts into believing he was an attorney, gaining admission to practice and access to "clients" in various jurisdictions under false pretenses—and then collecting substantial fees for "representing" those "clients." Evidence of Kieffer's acts outside the District of North Dakota was, therefore, "inextricably intertwined" with, and "intrinsic" to, the allegations in the superseding indictment. See id. at 543-44. Fed. R. Evid. 404(b) does not apply. See id.

-8-

## 2. Prosecutorial Misconduct

In the government's closing argument, the prosecutor opined Kieffer was "not accepting . . . responsibility" for his actions. Kieffer did not contemporaneously object but, in a post-trial motion, argued the prosecutor's statement "was an improper and deliberate reference to [Kieffer's] election not to testify in his own defense or to proceed to trial at all, and thus, a violation of his rights, pursuant to U.S. Const. amends. V [and] VI." The district court declined to grant Kieffer a new trial, and Kieffer now renews this prosecutorial misconduct argument on appeal.

Because Kieffer did not complain of prosecutorial misconduct until after his trial ended, we only review for plain error. See United States v. White, 241 F.3d 1015, 1020, 1022-23 (8th Cir. 2001); Fed. R. Crim. P. 52(b). Kieffer must show

> (1) there is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the appellant's substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

United States v. Marcus, ___ U.S. ___, ___, 130 S. Ct. 2159, 2164 (2010) (quoting Puckett v. United States, 556 U.S. ___, ___, 129 S. Ct. 1423, 1429 (2009)); accord United States v. Adamson, 608 F.3d 1049, 1055 (8th Cir. 2010) (requiring proof the defendant did not "affirmatively waive" the alleged error).

We discern no plain error. Viewed in context of the entire trial, see United States v. Christians, 200 F.3d 1124, 1128 (8th Cir. 1999), it is not clear or obvious that the prosecutor was commenting indirectly on Kieffer's failure to testify. Kieffer was attempting to convince the jury that the Ninth Circuit's decision to admit Kieffer to practice somehow relieved Kieffer of responsibility for his own deceitful conduct. In stating Kieffer was "not accepting . . . responsibility," the prosecutor apparently was

rebutting Kieffer's defense. The prosecutor probably was deflecting Kieffer's attempt to shift blame, emphasizing the District of North Dakota's attorney admission system was based on trust and the jury should not "lose sight of who is on trial." Cf. id. (holding the prosecutor's statement, "There was no contradictory evidence to those facts," was only "a general observation [about] the strength and clarity of the government's evidence presented at trial," and not grounds for plain error relief for alleged prosecutorial misconduct).

### 3.      Sufficiency of the Evidence

Kieffer argues the evidence presented at trial was insufficient to support his convictions.  "We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government, resolving evidentiary conflicts in the government's favor, and drawing all reasonable inferences in favor of the jury's verdict." United States v. Stymiest, 581 F.3d 759, 764 (8th Cir. 2009), cert. denied, 130 S. Ct. 2364 (2010).

### a.      Mail Fraud

To prove Count 1, the government was required to prove Kieffer "(1) voluntarily and intentionally devised or participated in a scheme to defraud; (2) entered into the scheme with intent to defraud; (3) knew that it was reasonably foreseeable that the mails would be used; and (4) used the mails in furtherance of the scheme." United States v. Johnson, 463 F.3d 803, 807 (8th Cir. 2006).  Kieffer asserts he never intended to defraud anyone.  He points out Bergeson and Mattox testified his work product was "good" and "well-written," respectively, and concludes there was no "scheme to defraud" because there was "no evidence . . . Kieffer committed malpractice in any case . . . , thereby depriving [that person] of the benefit of the services for which they bargained."  Kieffer points out he was paid for his work on the Sturgis, Henderson, and Noe matters before his admission to the District of North Dakota.  Kieffer submits the government failed to prove whether he used "the mails,"

because it is unclear whether he sent his application for admission to the District of North Dakota via the U.S. Postal Service or a private interstate carrier.

The record is replete with evidence to show Kieffer voluntarily and intentionally devised a scheme to defraud others into believing he was a licensed attorney and collecting substantial "fees" from them. Kieffer's intent to defraud may be inferred from his pattern of deceit. See United States v. Idriss, 436 F.3d 946, 950 (8th Cir. 2006). Not only did Kieffer lie to the judiciary about his qualifications, he lied to his "clients." For example, Kieffer bragged to Natasha Caron of an 85% success rate in § 2255 motions. The quality of Kieffer's work product is irrelevant. Kieffer's "clients" testified they would not have hired Kieffer had they known he was not an attorney. Kieffer's assertion that he did not collect any "fees" subsequent to his admission to the District of North Dakota is misleading, because Caron and Kenneth Henderson testified he solicited, albeit unsuccessfully, additional "fees" after his admission. Finally, there is sufficient evidence Kieffer used "the mails." McCabe's legal assistant testified she "distinctly" remembered Kieffer's application came via the U.S. Mail, FedEx, or UPS. Kieffer lived in California, McCabe practiced in North Dakota, and the jury was entitled to use its common sense to infer Kieffer did not hand-deliver his application.

### b.    False Statements

To prove Count 2, the government was required to prove Kieffer (1) knowingly and willfully, (2) made a statement, (3) that was materially false (4) to the District of North Dakota. See United States v. Turner, 130 F.3d 815, 818 (8th Cir. 1997). Kieffer apparently concedes the government proved he knowingly and willfully made false statements in his application for admission to the District of North Dakota when he stated he had graduated from the Antioch Law School and was a member of the Central District of California bar. Kieffer insists these "extraneous false statement[s]" were not material, however, because he was, in fact, admitted to the Ninth Circuit. Kieffer points out the District of North Dakota's local rules permitted admission to be

predicated solely upon proof of admission to a circuit court of appeals.  See D.N.D. Local R. 79.1.

We conclude a reasonable jury could find Kieffer's lies about graduation from the Antioch Law School and membership in the Central District of California bar were material.  When Kieffer's deceit was discovered, the Chief Judge of the District of North Dakota disbarred Kieffer.

### 4.     Entrapment by Estoppel

In a post-trial motion, Kieffer argued for the first time that he was "entitled to judgment of acquittal upon application of entrapment by estoppel."  Kieffer argued he reasonably relied upon his Ninth Circuit admission when seeking admission to the District of North Dakota and, therefore, the Ninth Circuit entrapped him into lying to the District of North Dakota and subsequently seeking fraudulent admission to other jurisdictions.  Kieffer submits "[t]he 'full faith and credit' statute, 28 U.S.C. § 1738, governs here."

We assume without deciding Kieffer's entrapment-by-estoppel argument is properly before us.  Compare United States v. Crump, 934 F.2d 947, 955-56 (8th Cir. 1991) (assuming entrapment issue was properly preserved), with United States v. Parker, 267 F.3d 839, 844 (8th Cir. 2001) (reviewing only for plain error).  The Ninth Circuit did not entrap Kieffer.  "The defense of entrapment by estoppel only applies 'when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct.'" United States v. Benning, 248 F.3d 772, 775 (8th Cir. 2001) (quoting United States v. Achter, 52 F.3d 753, 755 (8th Cir. 1995)).  Notwithstanding Kieffer's specious contention that the government failed to prove his admission to the Ninth Circuit was fraudulent—the fraud may be inferred from Kieffer's concession that he never passed the bar or attended law school—any reliance Kieffer placed upon the Ninth Circuit's decision to admit him to practice was not reasonable as a matter of law.

Entrapment by estoppel is an affirmative defense, <u>United States v. Patient Transfer Serv., Inc.</u>, 413 F.3d 734, 742 (8th Cir. 2005), yet Kieffer presented no evidence he could have reasonably believed he was properly admitted to practice before the Ninth Circuit, given his lack of legal education or training and his prior felony convictions. <u>See</u>, <u>e.g.</u>, <u>United States v. Treviño-Martinez</u>, 86 F.3d 65, 69 (5th Cir. 1996) ("In order for his reliance to be reasonable, the defendant must establish that 'a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.'" (quoting <u>United States v. Brebner</u>, 951 F.2d 1017, 1024 (9th Cir. 1991)). Nor is there any evidence of government misconduct. <u>See</u> <u>Benning</u>, 248 F.3d at 775 (emphasizing a government official must be guilty of "affirmative misconduct" for a defendant to succeed with an entrapment-by-estoppel defense). As the district court aptly observed, "One fraud successfully completed does not legitimize subsequent frauds."

### B. Sentence

In each of his four arguments for vacating his sentence, Kieffer maintains the district court committed procedural error in misapplying a part of the Guidelines.[6] "We review the application of the Guidelines to the facts de novo and factual findings underlying the calculation of the Guidelines for clear error." <u>United States v. Morse</u>, ___ F.3d ___, ___, No. 08-3425, 2010 WL 2869540, at *7 (8th Cir. July 23, 2010).

### 1. Amount of Loss—U.S.S.G. § 2B1.1(b)(1)

The district court assessed Kieffer with a ten-level increase to his base offense level, pursuant to U.S.S.G. § 2B1.1(b)(1)(F), because his offense resulted in a loss greater than $120,000. The district court found Kieffer intended the victims to suffer

---

[6]Kieffer does not argue his 51-month sentence is substantively unreasonable. At his sentencing hearing, Kieffer opined, "I do agree that . . . the [Guidelines] range, whatever you determine it to be, would likely be considered reasonable under Eighth Circuit law."

losses totaling $162,750. Kieffer argues the district court erred, because "it is readily apparent that the [District of North Dakota] was the only entity defrauded" and "the amount of loss . . . should have been determined to be zero . . . dollars."[7]

Kieffer cites no authority for his argument, which impermissibly cabins the analysis of his fraudulent scheme within the District of North Dakota. When all relevant conduct is included, see U.S.S.G. § 1B1.3(a)(2) (countenancing consideration of "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction"), we detect no error in the district court's loss calculation. See, e.g., United States v. Heath, 122 F.3d 682, 684-85 (8th Cir. 1997) (similarly including relevant conduct in loss calculation). Where, as here, the defendant fraudulently rendered services to victims by falsely posing as a licensed professional, under the Guidelines the loss amount "shall include the amount paid for the . . . services . . . rendered . . . , with no credit provided for the value of those . . . services." U.S.S.G. § 2B1.1 cmt. n.3(F)(v).

### 2. Mass Marketing—U.S.S.G. § 2B1.1(b)(2)(A)(ii)

The district court assessed Kieffer with a two-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(ii), for "mass-marketing." The Guidelines define "mass-marketing" to include fraudulent schemes "conducted through solicitation by . . . the Internet . . . to induce a large number of persons to . . . invest for financial profit." U.S.S.G. § 2B1.1, cmt. n.4(A). Kieffer posits the district court erred in applying the mass-marketing enhancement because attorneys referred all of his "clients." Kieffer

---

[7]In conjunction with his other sentencing arguments, Kieffer cites United States v. Smith, 951 F.2d 1164 (10th Cir. 1991), for the proposition that no enhancements to his base offense level are appropriate absent proof of some loss. Because we find the district court did not err in determining Kieffer is responsible for some loss, we need not discuss Kieffer's construction of Smith, a case we have repeatedly declined to follow in the past. See, e.g., United States v. Nelson, 988 F.2d 798, 808 (8th Cir. 1993); United States v. Prendergast, 979 F.2d 1289, 1292 (8th Cir. 1992).

points out he touted himself as an "Executive Director," not a licensed attorney, on his websites; his websites were largely "informational in nature"; and his websites concerned his "administrative advocacy and sentencing consulting business, Federal Defense Associates."[8] Kieffer questions whether one could ever "'mass-market' the services of a federal criminal defense practice" in light of the fact-intensive nature of each case.

The district court did not err in applying the mass-marketing enhancement. It is irrelevant that all of Kieffer's clients were referred through attorneys. See Hall, 604 F.3d at 545 (stating the mass-marketing enhancement "applies regardless of whether . . . [the defendant] could have successfully solicited his victims employing the more traditional arts of persuasion"). Kieffer does not dispute his websites were "accessible to millions of persons worldwide via the Internet," which is equivalent to "'a billboard on the information superhighway' to advertise his fraudulent scheme." See id. at 545, 546 (quoting United States v. Hanny, 509 F.3d 916, 920 (8th Cir. 2007)). Indeed, the evidence presented at Kieffer's trial and sentencing established that Kieffer used his websites to solicit "clients" and solidify the impression that he was a licensed attorney. Kenneth Henderson testified he hired Kieffer for help with his wife's habeas corpus case after viewing Federal Defense Associates' website, which touted Kieffer's knowledge of post-conviction issues, and "bec[oming] convinced that [Kieffer] had the expertise that would be required to handle a [28 U.S.C. §] 2255 [motion]." Kieffer advertised the same website to McCabe while convincing McCabe to vouch for Kieffer's admission to the District of North Dakota. Kieffer also collected fees through the website. Cf. Hanny, 509 F.3d at 920 (upholding mass-marketing enhancement in part because the website in question "allowed visitors to actively . . . purchase controlled substances").

---

[8]We note Kieffer's letterhead listed his email address as "hkieffer@dcounsel.com" and implied membership in the National Association of Criminal Defense Lawyers (NACDL).

### 3.    Sophisticated Means—U.S.S.G. § 2B1.1(b)(9)

The district court assessed Kieffer with a two-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(9)(C), for employing "sophisticated means" in his fraudulent scheme. The district court did not err. Kieffer's scheme "did not involve a single fraudulent act, but a complex series of fraudulent transactions." United States v. Halloran, 415 F.3d 940, 945 (8th Cir. 2005). Kieffer's use of his fraudulently obtained admission to the Ninth Circuit to gain admission to the District of North Dakota and then other courts was a multi-layered plot, akin to the use of corporate shells, for which courts have long upheld this enhancement. See U.S.S.G. § 2B1.1 cmt. n.8(B) (using "corporate shells" is generally indicia of "sophisticated means"); see, e.g., United States v. Waldner, 580 F.3d 699, 706 (8th Cir. 2009) (affirming sophisticated-means enhancement for use of corporate shells). By integrating a defunct law school into his scheme, Kieffer made his false statements difficult to verify. See U.S.S.G. § 2B1.1 cmt. n.8(B) (using fictitious entities is generally indicia of "sophisticated means"); see, e.g., United States v. Janecek, 86 F. App'x 215, 217 (8th Cir. 2003) (per curiam) (affirming sophisticated-means enhancement, where district court had found the defendant "moved embezzled funds through both current and defunct entities in an attempt to conceal the fraud").

### 4.    Abuse of Position of Public Trust—U.S.S.G. § 3B1.3

The district court assessed Kieffer with a two-level enhancement, pursuant to U.S.S.G. § 3B1.3, for "abus[ing] a position of public . . . trust." A licensed attorney generally holds a position of public trust, United States v. Post, 25 F.3d 599, 600-01 (8th Cir. 1994), and the Guidelines advise the abuse-of-trust adjustment applies where "the defendant provides sufficient indicia to the victim that the defendant legitimately holds a position of . . . public trust when, in fact, the defendant does not." U.S.S.G. § 3B1.3 cmt. n.3.

Kieffer argues the abuse-of-trust enhancement is inappropriate because he "never represented to anyone that he was a licensed attorney," but instead stated, "he

had been admitted to practice in various federal districts [sic]." This is a distinction without a difference. Only licensed attorneys may be admitted to practice in the federal courts, and Kieffer used his fraudulently obtained bar admissions to provide his victims with sufficient indicia he was a licensed attorney. And in conjunction with his application for admission to the District of North Dakota, Kieffer swore a solemn oath to "conduct [himself] as an attorney and counselor of [the] court, uprightly and according to the law," which he promptly violated. Kieffer's victims would not have hired him had they known he was not an attorney. The district court, therefore, did not err in applying the abuse-of-trust enhancement.

## III.   CONCLUSION

We affirm. We grant counsel's motion to withdraw, subject to counsel informing Kieffer about the procedures for seeking rehearing and for filing a petition for a writ of certiorari.

_____