FILED
United States Court of Appeals
Tenth Circuit

**March 31, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DANIEL PATRICK MEREDITH, a/k/a
Timothy Thomas, a/k/a John Batchelor,
a/k/a Meriam Dermer, a/k/a Benjamin
Gaines,

Defendant - Appellant.

No. 09-1416
(D. Ct. No. 1:08-CR-00271-JLK-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **KELLY**, and **HOLMES**, Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has

determined unanimously that oral argument would not be of material assistance in the

determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The

case is therefore ordered submitted without oral argument.

Defendant-appellant Daniel Patrick Meredith was indicted in June 2008 for his

participation in an elaborate credit card fraud scheme. He ultimately pleaded guilty to

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

credit card fraud, possession of counterfeit identification, and identity theft. The district court sentenced him to 84 months' imprisonment and ordered him to pay $141,270.62 in restitution. On appeal, Mr. Meredith challenges both the length of his imprisonment and the amount of restitution ordered by the district court. He contends the district court erred in enhancing his sentence based on its finding that he was a leader or organizer of criminal activity, and he argues that the district court improperly calculated the amount of restitution. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we AFFIRM.

## I. BACKGROUND

In May 2008, Postal Inspector Kevin Korsick learned that Mr. Meredith had been arrested after presenting an altered credit card and Oregon identification card during a transaction at a Target store in Colorado. Already aware of other instances in which Mr. Meredith had been involved with the use of counterfeit state identification and altered credit cards, Inspector Korsick began investigating him. The investigation uncovered a fraudulent scheme spanning multiple states and involving several stolen identities.

Essentially, Mr. Meredith and his associates would steal mail in order to obtain credit cards, remove the original account numbers on the face of the cards, and replace them with new account numbers Mr. Meredith had generated using an algorithm which mimicked the process used by credit-card companies to create legitimate account numbers. Mr. Meredith would then use a merchant identification number to test the counterfeit account numbers and associated credit limits. The magnetic strips on the

backs of the cards were demagnetized to require merchants to manually key in the new account numbers, using the same process that Mr. Meredith had already used to test the cards. Because merchants often asked for photo identification when manually entering a credit card number, Mr. Meredith and his co-conspirators also manufactured counterfeit identification to accompany the fraudulent credit cards.

On June 18, 2008, a grand jury returned a twelve-count indictment against Mr. Meredith. Mr. Meredith entered into a plea agreement whereby he pleaded guilty to Count 1, fraud and related activity with a counterfeit credit card in violation of 18 U.S.C. § 1029(a)(1); Count 5, possession of counterfeit identification with intent to defraud in violation of 18 U.S.C. § 1028(a)(1) and (c)(3)(A); and Count 12, aggravated identify theft in violation of 18 U.S.C. § 1028A. The parties also agreed that Mr. Meredith's total relevant conduct involved a loss of more than $120,000 but less than $200,000.

The Presentence Investigation Report ("PSR") calculated Mr. Meredith's advisory sentencing range under the United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.") at 70–87 months' imprisonment for Counts 1 and 5. Furthermore, Count 12 carried a mandatory statutory sentence of 24 months to be served consecutively to his other sentence. *See* 18 U.S.C. § 1028A. Thus, the PSR recommended two concurrent terms of 70 months for Counts 1 and 5, and a consecutive sentence of 24 months for Count 12, resulting in a total sentence of 94 months. In addition, the PSR recommended that Mr. Meredith be ordered to pay a total of $141,270.62 in restitution.

Mr. Meredith filed written objections to the PSR's calculation of his advisory

Guidelines range. Primarily, he challenged the applicability of an offense level enhancement under U.S.S.G. § 3B1.1(a) for his role as an organizer or leader of criminal activity. Without the enhancement, his advisory Guidelines range for Counts 1 and 5 would have been 57–71 months. Mr. Meredith also objected in writing to the PSR's restitution recommendation, contending that the losses should have been apportioned among the members of the criminal enterprise.

At the sentencing hearing, Inspector Korsick testified on behalf of the government and in support of application of the leadership role enhancement. After hearing Inspector Korsick's testimony, the district court agreed with the PSR author and the government that the leadership role enhancement applied. The court also granted the government's motion for a 15% downward departure under U.S.S.G. § 5K1.1 because it found that Mr. Meredith had provided the government with substantial assistance in its investigation. Ultimately, the district court sentenced Mr. Meredith to 84 months' imprisonment and ordered him to pay the full amount of restitution.

## II. DISCUSSION

A.     Mr. Meredith's Role in the Offense Under § 3B1.1(a)

In sentencing Mr. Meredith, the district court imposed a four-level enhancement for his leadership role in a criminal activity that involved five or more participants. *See* U.S.S.G. § 3B1.1(a). Mr. Meredith contends the evidence was insufficient to support the district court's application of the enhancement. "We review for clear error the district court's finding that [a defendant] acted as a leader or organizer for purposes of § 3B1.1."

*United States v. Wilfong*, 475 F.3d 1214, 1218 (10th Cir. 2007).

Section 3B1.1(a) provides for a four-level increase of a defendant's offense level if the district court finds that a defendant (1) was an organizer or leader (2) of a criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a); *United States v. Egbert*, 562 F.3d 1092, 1103 (10th Cir. 2009). On appeal, Mr. Meredith appears to challenge only the first finding, arguing that the evidence showed he "possessed a particular knowledge or skill that others sought to learn from him," but did not show that he was a leader or organizer. We disagree.

In determining whether the defendant was an organizer or leader of a criminal activity, the district court should consider:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4. More than one person might qualify as a leader or organizer, *id.*, and the defendant need only have supervised one participant to meet the definition. *Id.* cmt. n.2; *see also United States v. Gallant*, 537 F.3d 1202, 1241 (10th Cir. 2008). "The government bears the burden of proving the facts necessary to support the enhancement by a preponderance of the evidence." *Egbert*, 562 F.3d at 1103.

Here, the district court had ample evidence to support its finding that Mr. Meredith was a leader or organizer. Inspector Korsick testified that three members of the criminal enterprise identified Mr. Meredith as the leader or mastermind of the scheme. One

accomplice stated that Mr. Meredith rented her a hotel room and "set her up," providing her with payroll checks and fake identification so that she could attempt to collect on the checks and split the money with him. The same accomplice also told investigators that Mr. Meredith paid other individuals to steal mail. Another group member explained that Mr. Meredith recruited others to steal mail, that Mr. Meredith taught him how to alter credit cards, and that Mr. Meredith received a cut of the proceeds from those who participated in the scheme. The third accomplice stated that she also was recruited to pass counterfeit checks and conduct transactions using altered credit cards, but that Mr. Meredith never taught her enough for her to successfully mimic legitimate credit card numbers on her own.

While Mr. Meredith questions the reliability of these "unchallenged hearsay statements of indicted and unindicted participants," he does not dispute that he told investigators he passed along only portions of his scam to others, but "never put everything out on the table" so that no one else understood the entire scheme. Instead, he gave the group members just enough information for them to successfully complete their role in the operation.

We find this evidence sufficient to support the district court's application of the enhancement, and therefore hold that the district court did not err in calculating Mr. Meredith's sentence.

B.   <u>Restitution</u>

The district court ordered Mr. Meredith to pay a total of $141,270.62 in restitution

to five financial institutions which suffered losses due to the fraudulent credit card scheme.[1]  Although Mr. Meredith objected to the loss amount in his written objections to the PSR, he failed to renew the objection at sentencing; therefore, we review the district court's restitution order for plain error.  *United States v. Atencio*, 476 F.3d 1099, 1106 (10th Cir. 2007), *overruled in part on other grounds by Irizarry v. United States*, 553 U.S. 708 (2008) ("[F]ailure to object to a disputed fact at the sentencing hearing constitutes forfeiture, despite prior submission of a written objection.").  "We find plain error only when there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007).

Under the Mandatory Victims Restitution Act ("MVRA"), a district court must impose restitution when sentencing a defendant convicted of an offense "in which an identifiable victim . . . has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(a)(1), (c)(1)(B).   The amount of restitution ordered by the court "must be based on actual loss." *United States v. Quarrell*, 310 F.3d 664, 680 (10th Cir. 2002). Furthermore, "a district court may not order restitution in an amount that exceeds the loss caused by the defendant's conduct." *United States v. Smith*, 156 F.3d 1046, 1057 (10th Cir. 1998).

On appeal, Mr. Meredith does not contest the district court's finding regarding the

---

[1]Specifically, the district court ordered Mr. Meredith to pay restitution in the amounts of $58,900.02 to Citibank, $74,596.15 to United States Bank, $5,214.19 to Bank of America, $1,693.39 to Discover, and $866.87 to Capital One.

amount of actual loss suffered by the financial institutions; rather, he argues that he was improperly held liable for losses caused by other members of the criminal scheme. We are not persuaded.

Mr. Meredith's argument that he is being held liable for losses properly attributable to other individuals is based on his belief that he should only be held liable for the losses caused by transactions in which he personally attempted to use an altered credit card or fraudulent identification. This characterization of responsibility ignores Mr. Meredith's role in creating and organizing the scheme, altering and teaching others to alter credit cards, and creating fake identification for those who used the altered cards. In light of his role as an organizer, leader, and teacher, the district court properly held Mr. Meredith liable for all of the losses caused by the scheme. Moreover, the MVRA expressly contemplates situations in which multiple defendants have contributed to the loss of a victim, and it authorizes the court to either "make each defendant liable for payment of the full amount of restitution or [] apportion liability among the defendants to reflect the level of contribution to the victim's loss . . . ." 18 U.S.C. § 3664(h). Thus, we hold that the district court did not err in holding Mr. Meredith liable for all of the losses caused by the criminal scheme.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Meredith's sentence and the district court's restitution order.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge