**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

HOWARD O. KIEFFER,

      Defendant - Appellant.

No. 13-1371
(D.C. No. 09-CR-00410-CMA-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HARTZ**, and **MATHESON**, Circuit Judges.

Defendant-Appellant Howard Kieffer has appealed from the district court's

First, Third, and Fourth Amended Judgments sentencing him. After entering the

First Amended Judgment, the district court entered a Second Amended Judgment,

only to later vacate and replace it with the Third and Fourth Amended Judgments.

Mr. Kieffer asserts that the district court lacked authority to enter the last two

judgments in his case and that the court's order of restitution is invalid. We

agree. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

instruct the district court to vacate the First, Third, and Fourth Amended Judgments forthwith and enter a final judgment conforming to the sentence orally pronounced at Mr. Kieffer's resentencing hearing on August 22, 2013, but with full credit for all time served and without the order of restitution.

Background

In 2008, Howard O. Kieffer was indicted in the District of North Dakota for mail fraud in violation of 18 U.S.C. § 1341 and making false statements in violation of 18 U.S.C. § 1001, arising from his conduct of posing as a licensed criminal defense attorney. After a two-day trial, he was found guilty and sentenced to 51 months of imprisonment and ordered to pay $152,750 in restitution to six victims, including family members of Gwen Bergman, the victim named in Mr. Kieffer's later Colorado indictment.[1] The Eight Circuit upheld the convictions and sentence. United States v. Kieffer, 621 F.3d 825 (8th Cir. 2010).

In 2009, Mr. Kieffer was indicted in the District of Colorado on three counts: (1) wire fraud in violation of 18 U.S.C. § 1343; (2) making false statements in violation of 18 U.S.C. § 1001; and (3) contempt of court in

---

[1] During trial, the court admitted evidence of Mr. Kieffer's fraudulent representation of Ms. Bergman as well as his conduct in other jurisdictions to prove the "scheme" underlying his mail fraud. Under the United States Sentencing Guidelines (USSG), the court also considered Mr. Keiffer's conduct with various victims, including Ms. Bergman, as "relevant conduct" to calculate its loss figure.

violation of 18 U.S.C. § 401. The first count alleged that Mr. Kieffer represented criminal defendant Gwen Bergman in Colorado federal court and received $67,750 in fees from her family. Mr. Kieffer filed a motion to dismiss the Colorado indictment, alleging a violation of the Double Jeopardy Clause of the Fifth Amendment because the conduct underlying his North Dakota conviction and the conduct alleged in the Colorado indictment were "part and parcel" of the same scheme to defraud. The district court denied his motion, holding that Mr. Kieffer's mail fraud and false statements in North Dakota were factually and legally distinct from his wire fraud and false statements in Colorado.

A jury convicted Mr. Kieffer on all three counts. The court put Mr. Kieffer on notice of its intent to depart upward from the sentence recommended by the probation department—60 months to run concurrent to the 51-month North Dakota sentence—because this sentence was not sufficiently severe. It under-represented "the seriousness of [Mr. Kieffer's] criminal history and the danger that [he] present[s] to the public based on [his] repeated pattern of taking advantage of others." IV R. Supp. 11. On August 16, 2010, the district court sentenced Mr. Kieffer to 57 months of imprisonment consecutive to his 51-month North Dakota sentence. The court also ordered Mr. Kieffer to pay restitution of $152,019 to several victims of his scheme unaccounted for in the North Dakota restitution order.

Mr. Kieffer appealed, and we upheld Mr. Kieffer's convictions but vacated his sentence on Counts 1 and 2 due to several errors by the district court. United States v. Kieffer, 681 F.3d 1143 (10th Cir. 2012). Among these errors, the district court improperly imposed a consecutive sentence for Mr. Kieffer's Colorado conduct despite U.S.S.G. § 5G1.3(b), which instructs that any term should run concurrent to his North Dakota term.[2] Id. at 1166–69. Additionally, we held that the district court's restitution order was invalid because there was no factual basis for the amounts included in the order and insufficient proof that the individuals deemed to be entitled to restitution were victims of Mr. Kieffer's offense of conviction. Id. at 1171. We remanded the case for resentencing.

On August 22, 2013, at Mr. Kieffer's resentencing hearing, the district court calculated Mr. Kieffer's guideline range as 57–71 months. However, consistent with its previously stated position, the court deemed an upward variance appropriate. The court stated:

> Given that the 10th Circuit has ruled that this Court cannot run the sentence in this case consecutive to the 51-month sentence he received in [the North Dakota case], but rather must run the sentence

---

[2] U.S.S.G. § 5G1.3(b) reads: "If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . the sentence for the instant offense shall be imposed as follows:
(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment."

in this case concurrent to that sentence, the Court finds that a sentence within the guideline range is not sufficient to meet the objectives set forth at 18 United States Code 3553(a).

III R. 129. The court reiterated that Mr. Kieffer had a "significant history of misleading others and engaging in manipulative and fraudulent conduct." Id. at 127–28. He "undermined the integrity of the justice system" by preying upon vulnerable criminal defendants and lying to members of the bar and bench. Id. at 128–29. He had even continued to fraudulently pose as an attorney before the Bureau of Prisons during his pretrial release in the North Dakota case. Id. at 137.

During Mr. Kieffer's resentencing hearing, the district court repeatedly emphasized its clear intent: to increase his total term of imprisonment by 48 months, to be served following the conclusion of his North Dakota term of 51 months. Id. at 139 ("My intent is to impose a sentence that would require Mr. Kieffer to serve 48 months of imprisonment for these convictions. . . . [I]t is a 48-month sentence that he needs to serve in this case."). However, a conversation with Mr. Kieffer's probation officer during the hearing resulted in confusion about the language necessary to effectuate this intent within the confines of U.S.S.G. § 5G1.3. Id. at 98–101. After a lengthy discussion, the probation officer advised the court to refer to an "adjustment" of 51 months in order to ensure that the Bureau of Prisons would give Mr. Kieffer full credit for the time he served in North Dakota.

The court then announced Mr. Kieffer's sentence as follows:

> [I]t is the judgment of the Court that [Mr. Kieffer] is hereby committed to the custody of the Bureau of Prisons to be imprisoned **for a term of 99 months on Counts 1 and 2.** The terms of imprisonment in this case are to be served concurrently to one another and also concurrent to the 51 months of imprisonment that was imposed upon and served by defendant in [North Dakota].
>
> Just to make it clear, it is the Court's intent that the defendant be incarcerated for a term of 48 months for the criminal conduct he was convicted of in Counts 1 and 2 in this case. So that's 99 months less or adjusted by the 51 months that he served in North Dakota for a total of 48 months.

Id. at 130 (emphasis added). It is evident that the district court understood this pronouncement to impose 48 months of additional imprisonment for Mr. Kieffer's conduct in the District of Colorado, after crediting him for the time he served in North Dakota.

On September 3, 2013, the First Amended Judgment, which was intended to memorialize in writing Mr. Kieffer's orally pronounced sentence, was entered as follows:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: ninety-nine (99) months as to each of Counts 1 and 2, to be served concurrently with each other and with the [North Dakota sentence]. Pursuant to 5G1.3(b), the Court adjusted the ninety-nine (99) months by subtracting the fifty-one (51) months already served in [North Dakota], **for a remaining sentence of forty-eight (48) months as to each of Counts 1 and 2, and thirty-seven (37) months as to Count 3, all counts to be served concurrently with each other.**

I R. 211 (emphasis in original).  As the BOP understood the written sentence, and contrary to the court's clear intent, Mr. Kieffer was set to receive only 8 additional months in prison for his conduct in the District of Colorado.

Mr. Kieffer filed a notice of appeal from the First Amended Judgment on September 5, 2013.  The government did not object to or appeal the sentence.  Over a month later, on October 8, 2013, Mr. Kieffer's probation officer learned that the Bureau of Prisons was processing Mr. Kieffer for release several years in advance of the court's oral sentence.  Citing Federal Rule of Criminal Procedure 36 for authority to correct a clerical mistake, the district court entered the Second Amended Judgment on October 10, 2013.  The Second Amended Judgment imposed a term of:

> [N]inety-nine (99) months as to each of Counts 1 and 2, and 37 months as to Count 3, each count to be served concurrently and concurrent with the sentence imposed in [the North Dakota case].

II. R. Supp. 541.  Note that, as it later became clear to the court, under the Second Amended Judgment the Bureau of Prisons would have started Mr. Kieffer's 99-month term on August 16, 2010, the date of the initiation of the Colorado case.  This would have failed to give him credit for 11 months he served between that date and the start of his incarceration in North Dakota on September 14, 2009.  Id. at 551–53.

Following the court's entry of the Second Amended Judgment, we granted Mr. Kieffer's unopposed motion to abate his appeal from the First Amended

Judgment. Mr. Kieffer then filed a petition for writ of mandamus, seeking an order to vacate the Second Amended Judgment and reinstate the First Amended Judgment. On December 6, 2013, we denied Mr. Kieffer's petition.

On December 17, 2013, the government filed a motion seeking a limited remand to allow the district court to "clarify the basis for its issuance" of the Second Amended Judgment and "to ensure the judgment accurately reflects the sentence orally pronounced on August 22, 2013." The parties filed a joint status report stating their agreement that the Second Amended Judgment did not accurately reflect the sentence orally imposed on August 22, 2013. They agreed that this court should remand the case with instructions to vacate the Second Amended Judgment. However, the parties diverged on their view of the appropriate next steps. Mr. Kieffer contended that, because the district court did not have jurisdiction to alter the First Amended Judgment, it should be reinstated as written. The government contended that the district court did have jurisdiction to alter the First Amended Judgment but did so incorrectly. The court should therefore correct the Second Amended Judgment to reflect either a sentence of 48 months consecutive or 99 months concurrent with an 11-month adjustment to account for the full term Mr. Kieffer had already served.

On January 27, 2014, this court remanded the case for the "limited purpose of addressing the second Amended Judgment." II R. Supp. 557. We authorized

the district court to "conduct any and all proceedings it deems appropriate and necessary with respect to the second Amended Judgment." Id. at 558.

The limited remand hearing was held on March 18, 2014. Mr. Kieffer appeared by video-conference. During the hearing, the district court, as requested, sought to clarify its basis for the issuance of the Second Amended Judgment. The court expressed that the First Amended Judgment "did not accomplish" its "sentencing intent." V R. Supp. 21. The court had therefore entered the Second Amended Judgment, deeming its alteration to be an allowable correction of a clerical error under Rule 36. The court stated that the clerical error was in "the transcription of the Judgment, because the language used did not effectuate the Court's intent." Id. at 25. The language was "a result of everybody being confused . . . about how the Bureau of Prisons would interpret the language." Id. The court reiterated: "the clerical error was made when probation gave me the Judgment that I thought would accomplish what I needed. But it was not—I was not aware that the Bureau of Prisons would not interpret the Judgment in the way that prior defense counsel advised this Court it would interpret it." Id. at 32.

The court then held that, "pursuant to Rule 36 and the limited remand from the Tenth Circuit, it has jurisdiction and authority to amend the Judgment for a third time, and hopefully this time we will get it right." Id. at 30. In order to accomplish its intent to impose 48 additional months of imprisonment for Mr.

Kieffer's conduct in Colorado, the court decided to first remove the downward adjustment of 51 months. Then, the court changed the base term of imprisonment from 99 months to 88 months to accurately reflect the time Mr. Kieffer served in North Dakota and to ensure he would be imprisoned for no more than the intended 48 additional months. The court then reduced Mr. Kieffer's sentence on Count 2 because the original term of 99 months of imprisonment exceeded the statutory maximum of 60 months.

Following the limited remand hearing, the district court vacated the Second Amended Judgment and, on March 26, 2014, entered the Third Amended Judgment:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: eighty-eight (88) months as to Count 1, sixty (60) months as to Count 2, and thirty-seven (37) months as to Count 3, each count to be served concurrently with each other and with the [North Dakota sentence].

I R. Supp. 15.

Then, on April 4, 2014, the district court issued the Fourth Amended Judgment, altering the date of imposition of judgment. The initial judgment was dated August 16, 2010, and the First, Second, and Third Amended Judgments were dated August 22, 2013. The Fourth Amended Judgment was dated March 18, 2014. Id. at 30.

- 10 -

## Discussion

A.   The District Court Lacked Authority to Enter the Third and Fourth
     Amended Judgments

Despite the complicated history outlined above, which the district court

described as "tortured," V R. Supp. 11, the question presented on appeal is

simple: whether the district court had authority to enter the Third and Fourth

Amended Judgments.  Because the district court vacated the Second Amended

Judgment, and because the parties do not directly appeal the court's

authority—under Rule 36 or otherwise—to enter that judgment, we need not

address whether it was properly entered.  The government argues that the district

court acted within its power when it entered the Third and Fourth Amended

Judgments pursuant to both Rule 36 and our limited remand order.  Mr. Kieffer

argues that the district court lacked authority because the 88-month term of

imprisonment reflected in the latter judgments was not originally imposed—or

even referenced—at the August 22, 2013 resentencing hearing.

We review a court's exercise of jurisdiction to substantively modify a

defendant's sentence de novo.  United States v. Blackwell, 81 F.3d 945, 947 (10th

Cir. 1996).

### 1.   Rule 36 Does Not Provide Authority

A district court does not have inherent authority to substantively modify a

previously imposed sentence.  It may make modifications only pursuant to

statutory authorization.  United States v. Smartt, 129 F.3d 539, 540 (10th Cir.

1997); see also United States v. Graham, 704 F.3d 1275, 1277 (10th Cir. 2013).

The relevant statute provides:

> The court may not modify a term of imprisonment once it has been
> imposed except that . . . the court may modify an imposed term of
> imprisonment to the extent otherwise expressly permitted by statute
> or by Rule 35 of the Federal Rules of Criminal Procedure.

18 U.S.C. § 3582(c)(1)(B).  We note that Rule 35(a), which allows for the

correction of clear errors, such as arithmetic or technical errors, has no

application here because it requires corrections to be made within 14 days of

sentencing.  Fed. R. Crim. P. 35(a).  The Third Amended Judgment was entered

several months after Mr. Kieffer's resentencing hearing and the entry of the First

and Second Amended Judgments.

The government asserts that the Third and Fourth Amended Judgments

merely modified the Second Amended Judgment—not Mr. Kieffer's sentence

itself—pursuant to Rule 36. When the court changed its originally announced

term of 99 months "to a term of 88 months, in the third and fourth amended

judgments, it made a second, authorized clerical correction to implement its

pronouncement that Kieffer should receive full credit for his time served."  Aplee.

Br. 30.

Rule 36 states that, "[a]fter giving any notice it considers appropriate, the

court may at any time correct a clerical error in a judgment, order, or other part of

the record." Fed. R. Crim. P. 36. While Rule 36 does not give a court authority to substantively change a defendant's sentence, it authorizes amendment to a written judgment to bring it into conformity with an orally pronounced sentence. United States v. Sasser, 974 F.2d 1544, 1561–62 (10th Cir. 1992); United States v. Werber, 51 F.3d 342, 347 (2d Cir. 1995). Rule 36 is narrow, applying only to uncontroversial and non-substantive clerical errors "of the sort that a clerk or amanuensis might commit, mechanical in nature." United States v. Penson, 526 F.3d 331, 335 (6th Cir. 2008) (quoting United States v. Robinson, 368 F.3d 653, 656 (6th Cir. 2004)). A Rule 36 clerical error "should appear on the face of the record, leaving little need for adversary proceedings to clarify the issue"; thus, notice to the defendant is not strictly required. Werber, 51 F.3d at 347; Fed. R. Crim. P. 36 (directing a court to give only such "notice it considers appropriate"). It does not apply to judicial errors, arising from oversight or omissions made by the court itself when issuing its oral order. United States v. Daddino, 5 F.3d 262, 264–65 (7th Cir. 1993).

When the court changed the 99-month term of imprisonment announced at Mr. Kieffer's resentencing hearing to an 88-month term, it attempted to do more than correct a transcription error. Rather than correcting the accidental transposition of numbers or the omission of an operative word or phrase, the court sought to substantively alter Mr. Kieffer's sentence to remedy its own previous misunderstanding of how to properly construct the sentence for all time served.

- 13 -

The same is true of the court's reduction of Mr. Kieffer's sentence on Count 2 from 99 months to 60 months, to bring that term properly within the statutory maximum. Such alterations are plainly beyond the scope of Rule 36.

2.     This Court's Limited Remand Does Not Provide Authority

The government also contends that this court's limited remand on January 27, 2014 granted the district court authority to change Mr. Kieffer's sentence. A district court may modify a defendant's sentence pursuant to an order directing modification from an appellate court. United States v. Blackwell, 81 F.3d 945, 947 n.2 (10th Cir. 1996). However, when a sentence is remanded, the district court must look to the appellate court's mandate "for any limitations on the scope of remand and, in the absence of such limitations, exercise discretion in determining the appropriate scope." United States v. West, 646 F.3d 745, 749 (10th Cir. 2011).

In this instance, the scope of our remand was necessarily limited and constrained by the position of the parties. The government requested a remand "for the purpose of clarifying (among other things) the second Amended Judgment." Mr. Kieffer requested a remand for the purpose of reinstating the First Amended Judgment. Since the parties were unable to reach broader agreement, we expressly provided that our remand was for the "limited purpose of addressing the second Amended Judgment." We instructed the parties to notify the district court of their concerns, and we authorized the court to conduct "any

and all proceedings it deems appropriate and necessary with respect to the second Amended Judgment." However, by no means did we authorize the court to resentence Mr. Kieffer.

Furthermore, even if our limited remand could have been construed to encompass resentencing, the court would have been required to meet all of the constitutional guarantees of a criminal sentencing hearing, including that the defendant must be physically present. Fed. R. Crim. P. 43(a). Mr. Kieffer did not waive the right to appear at a resentencing, V R. Supp. 35–37, and the Tenth Circuit has held that video-conferencing at sentencing is not properly within the scope of a district court's discretion. United States v. Torres-Palma, 290 F.3d 1244, 1248 (10th Cir. 2002).

3.     The Court Must Adhere to its Orally Pronounced Sentence

Thus, we find that the district court exceeded its authority when it entered the Third and Fourth Amended Judgments. Mr. Kieffer asserts that the "appropriate remedy" is a remand to the district court with instructions to vacate the Third and Fourth Amended Judgments and reinstate the First Amended Judgment. Aplt. Br. 38. We disagree because the First Amended Judgment did not accurately memorialize the court's orally pronounced sentence.

It is well-established that an orally pronounced sentence controls over a written judgment when the two conflict. United States v. Barwig, 568 F.3d 852, 855–56 (10th Cir. 2009); United States v. Villano, 816 F.2d 1448, 1450–51 (10th

- 15 -

Cir. 1987) (en banc). This rule derives from the principle that "[t]he imposition of punishment in a criminal case affects the most fundamental human rights: life and liberty." Villano, 816 F.2d at 1452. As such, "[s]entencing should be conducted with the judge and defendant facing one another and not in secret." Id.

Here, the sentence orally pronounced at Mr. Kieffer's August 22, 2013 resentencing hearing was unambiguous. The court sentenced Mr. Kieffer to "a term of 99 months on Counts 1 and 2," to be served concurrently to each other and to the 51 months of imprisonment that Mr. Kieffer had already served in North Dakota. III R. 130. The court continued by stating, "to make it clear," Mr. Kieffer should be incarcerated "for a term of 48 months for the criminal conduct he was convicted of in Counts 1 and 2 *in this case*," emphasizing its intent for Mr. Kieffer to be imprisoned for his conduct in Colorado beyond his North Dakota sentence. Id. (emphasis added). Read in this context, the court's next statement—"that's 99 months less or adjusted by the 51 months that he served in North Dakota for a total of 48 months"—does not alter the 99-month sentence. Id.

The written First Amended Judgment imposed only "a remaining sentence of forty-eight (48) months" as to Counts 1 and 2. Accordingly, we instruct the district court to enter a new and final judgment consistent with its orally pronounced sentence of 99 months but with full credit for the 11 months Mr. Kieffer served between the start of his incarceration in North Dakota and the start

of the Colorado case. This results in a sentence of 88 months on Count 1. Also, the district court must reduce Mr. Kieffer's term of imprisonment on Count 2 from 99 months to 60 months.

B.     An Upward Variance Does Not Violate the Double Jeopardy Clause

Because we instruct the court to enter a judgment consistent with its intent to vary upward from the sentencing guidelines, we next address Mr. Kieffer's second argument on appeal: whether an upward variance violates the Double Jeopardy Clause of the Fifth Amendment.

A district court's application and interpretation of the Sentencing Guidelines are reviewed de novo, and its factual findings are reviewed for clear error. United States v. West, 646 F.3d 745, 747 (10th Cir. 2011). Mr. Kieffer argues that the district court violated the Double Jeopardy Clause by, essentially, sentencing him in both North Dakota and Colorado for his fraudulent representation of Gwen Bergman. He argues that U.S.S.G. § 5G1.3(b) requires a downward adjustment and concurrent sentences for crimes involving the same conduct or course of conduct. He contends that the district court was explicitly dissatisfied with concurrent sentences and impermissibly sought to accomplish the same result through an upward variance from the sentencing guidelines.

The Double Jeopardy Clause "protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969). However, its protection is limited. The fact that the scheme to defraud Ms. Bergman

underlying his Colorado wire fraud charge was "part and parcel" of the course of conduct underlying his North Dakota mail fraud charge does not mean he cannot be convicted of and sentenced for both crimes. In a mail or wire fraud conviction, it is not the plan or scheme itself that is punished, "but rather each individual use of the mails [or wires] in furtherance of that scheme." United States v. Gardner, 65 F.3d 82, 85 (8th Cir. 1995). The proper inquiry is whether the multiple charges constitute the "same offense" or whether they require different factual predicates and legal analysis. Blockburger v. United States, 284 U.S. 299, 304 (1932). Mr. Kieffer's convictions for wire fraud and mail fraud, as well as his convictions for false statements to authorities in North Dakota and Colorado, required separate and distinct items of proof. Therefore, they do not violate the Double Jeopardy Clause.

Additionally, Mr. Kieffer concedes that a court does not violate the Double Jeopardy Clause "by convicting and sentencing a defendant for a crime when the conduct underlying that offense has been considered in determining the defendant's sentence for a previous conviction." Witte v. United States, 515 U.S. 389, 391 (1995). "[T]he introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." United States v. Felix, 503 U.S. 378, 387 (1992). Thus, the North Dakota court's consideration of evidence of Mr. Kieffer's conduct concerning Ms. Bergman does not preclude his conviction for that conduct in Colorado.

Finally, it is well-established that a district court has discretion under the U.S.S.G. to enter an upward variance from a recommended sentence. United States v. Booker, 543 U.S. 220 (2005). Here, the district court thoroughly explained its grounds for imposing a longer sentence, including Mr. Kieffer's pattern of misleading vulnerable victims. Mr. Kieffer argues that, nevertheless, an upward variance violates the requirement under § 5G1.3 that a court "adjust [a defendant's] sentence for any period of imprisonment already served on the undischarged term of imprisonment." Yet, Mr. Kieffer's Colorado sentence will adequately credit him for all time served in North Dakota, and thus no adjustment is necessary. See U.S.S.G. § 5G1.3(b)(1) (stating that the court must adjust a defendant's sentence only if it determines that a previously served sentence "will not be credited" by the Bureau of Prisons).

C.     The Restitution Ordered is Invalid

Mr. Kieffer also appeals from the district court's order to pay restitution in the amount of $120,019 to ten individuals and groups of individuals who were not named in the superseding indictment. Aplt. Br. 51–52. He argues first that the Sixth Amendment prohibits an award of restitution based on factual findings made by a judge rather than a jury. He next argues that the government failed to adequately prove losses encompassed by the MVRA. We review the legality of a restitution award de novo. United States v. Serawop, 505 F.3d 1112, 1117 (10th Cir. 2007). We review the district court's factual findings for clear error and the

- 19 -

amount of a restitution award for abuse of discretion.  United States v. Wilson,

416 F.3d 1164, 1170 (10th Cir. 2005).

     1.     The Restitution Award is Not Unconstitutional

Mr. Kieffer argues that the district court violated his constitutional rights

by ordering restitution for conduct that was not charged against him and for

which a jury did not convict him.  Although he concedes it is "common practice"

for federal courts to order restitution for crimes that have neither been charged

nor proven to a jury beyond a reasonable doubt, he argues that several recent

Supreme Court cases cast doubt on the legality of such awards.  Aplt. Br. 53.

The Supreme Court in Jones v. United States, 526 U.S. 227 (1999), and

Apprendi v. New Jersey, 530 U.S. 466 (2000), established the rule that any fact

other than prior conviction that increases a defendant's maximum potential

sentence must be charged in an indictment, submitted to a jury, and proven

beyond a reasonable doubt.  Apprendi, 530 U.S. at 476.  In this context, fact-

finding by a judge based on a preponderance of the evidence standard undermines

"constitutional protections of surpassing importance": the prohibition against

deprivations of liberty without "due process of law" under the Fifth and

Fourteenth Amendments, and the guarantee of a "speedy and public trial" by an

"impartial jury" under the Sixth Amendment.  Id. at 476–77.

In 2012, the Supreme Court held that the so-called "Apprendi rule" applies

to sentences of substantial criminal fines.  S. Union Co. v. United States, 132 S.

- 20 -

Ct. 2344, 2348–49 (2012).  The "core concern" in <u>Apprendi</u> was to preserve the long-standing jury function of "determining whether the prosecution has proved each element of an offense beyond a reasonable doubt" by reserving only to juries the determination of facts that warrant punishment.  <u>Id.</u> at 2350 (quoting <u>Oregon v. Ice</u>, 555 U.S. 160, 163 (2009)).  There is no principled reason to distinguish between various forms of punishment such as imprisonment, death, and criminal fines.  Although monetary rather than personal in nature, fines are "penalties inflicted by the sovereign for the commission of offenses."  <u>Id.</u>

Then, in <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013), the Supreme Court again applied its analysis in <u>Apprendi</u> to hold that only a jury can make a factual determination that would increase a mandatory minimum sentence.  <u>Id.</u> at 2155.  In reaching its conclusion, the Court overruled precedent which had distinguished between facts that would increase a defendant's statutory *maximum*—at issue in <u>Jones</u> and <u>Apprendi</u>—and facts that increase a defendant's mandatory *minimum* sentence.  <u>Harris v. United States</u>, 536 U.S. 545 (2002).  The Court stated broadly that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."  <u>Alleyne</u>, 133 S. Ct. at 2155.

With this analysis in mind, whether the district court's restitution award is unconstitutional depends on whether restitution under the MVRA is a criminal penalty.  If restitution is not penal, the <u>Apprendi</u> rule is inapplicable and a judge,

rather than a jury, may consider evidence in imposing its order. Although there is a circuit split and much scholarly debate on this question, Tenth Circuit precedent is clear that restitution is a civil remedy designed to compensate victims—not a criminal penalty. United States v. Serawop, 505 F.3d 1112, 1123 (10th Cir. 2007) ("Despite plausible arguments from other circuits that '[c]riminal restitution rests with one foot in the world of criminal procedure and sentencing and the other in civil procedure and remedy,' in this circuit, restitution's two feet remain squarely planted in the field of compensation and remediation." (citation omitted)); United States v. Nichols, 169 F.3d 1255, 1279 (10th Cir. 1999) (holding that the purpose of the MVRA is "not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses"); United States v. Hampshire, 95 F.3d 999, 1006 (10th Cir. 1996) (same). But see, e.g., United States v. Green, 722 F.3d 1146, 1150 (9th Cir. 2013) (explaining that "restitution under the MVRA is punishment" in some—but not all—contexts); United States v. Ziskind, 471 F.3d 266, 270 (1st Cir. 2006) ("[R]estitution ordered as part of a criminal sentence is a criminal penalty, not a civil remedy."); United States v. Ross, 279 F.3d 600, 609 (8th Cir. 2002) (holding that restitution is a criminal "penalty" within the meaning of Apprendi).

Mr. Kieffer offers compelling reasons why we might consider restitution under the MVRA to be penal. Most importantly, the MVRA makes restitution a

"mandatory" part of a court's criminal sentencing process for certain offenses. Once facts have been found regarding a victim's pecuniary loss, a court must order restitution. 18 U.S.C. § 3663A(a)(1).[3] Nevertheless, we are bound by our ample precedent unless the Supreme Court instructs otherwise. Thus, Southern Union and Alleyne do not compel us to hold that fact-finding by a jury is required before a district court may order restitution.

### 2. The Restitution Award Fails for Lack of Proof

Although restitution may properly be ordered without jury fact-finding, the government here failed to show the required nexus between the alleged losses to be restored and Mr. Kieffer's offense of conviction. Additionally, the government failed to prove the loss amounts underlying the court's order.

The MVRA requires a court to order restitution to any person "directly harmed by the defendant's criminal conduct in the course of [a] scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). This is a relatively broad category of victims, extending to any person harmed in the course of a scheme—not simply the primary or named victim of that scheme. See United States v. Gordon, 480 F.3d 1205, 1211 (10th Cir. 2007). However, a court may not order a defendant to pay restitution to a person who was not a victim of the

---

[3] In fact, a court's lack of discretion is more stringent under the MVRA than it is in the context of criminal fines. The court may waive a fine based on a defendant's indigency, 18 U.S.C. § 3572(a)(1), (2), but may not consider a defendant's ability to pay when determining a restitution amount, 18 U.S.C. §§ 3663A, 3664(f)(1)(A).

offense of conviction. United States v. Reifler, 446 F.3d 65, 120–21 (2d Cir. 2006). Further, the government bears the burden of demonstrating the amount of loss sustained by each victim as the result of the offense of conviction. 18 U.S.C. § 3664(e). Any dispute as to the proper amount of restitution must be resolved by the court by a preponderance of the evidence. Id.

Mr. Kieffer was convicted of wire fraud for using a website promoting his unauthorized legal practice to bilk Gwen Bergman and her family out of several thousand dollars between October 2007 and May 2008. However, the court ordered restitution of more than $120,000 based on losses that accrued exclusively to victims other than Ms. Bergman prior to October 2007. Mr. Kieffer likens these circumstances to those in Hughey v. United States, 495 U.S. 411 (1990). There, a defendant pleaded guilty to the unauthorized use of one credit card, but the district court ordered him to make restitution for his use of approximately 30 other credit cards issued to people other than the victim of his underlying conviction. The Supreme Court invalidated the portions of the order related to people other than the single victim of the defendant's crime of conviction. Id. at 422.

The government asserts that the individuals identified for restitution were a necessary part of Mr. Kieffer's plan to defraud Ms. Bergman. When they hired Mr. Kieffer prior to 2007, they "furthered" his ultimate scheme by giving him the "funding and legitimacy" he needed to mislead Ms. Bergman. Aplee. Br. 47.

Thus, the government contends that the defendant in Hughey pleaded guilty to a single crime affecting a single victim, while Mr. Kieffer's scheme to defraud Ms. Bergman involved necessary collateral losses to other victims in the preceding years.  Id.

Although the definition of "victim" under the MVRA is relatively broad in the context of a scheme to defraud, it is not limitless.  The government may not shoehorn Mr. Kieffer's conduct as to other people into a restitution award for criminal conduct as to Ms. Bergman.  Under the facts here, Mr. Kieffer's unlawful conduct outside of Colorado and outside of the relevant time range did not reasonably occur "in the course of the scheme" to defraud Ms. Bergman.  Thus, the district court erred in finding that the individuals identified by the government were victims under the MVRA.

The cases cited by the government are not to the contrary.  In United States v. Williams, 356 F. App'x 167 (10th Cir. 2009) (unpublished), this court upheld a restitution order based on a wire fraud scheme even though the claimed losses occurred outside of the relevant statute of limitations.  Yet, the scheme in Williams was substantially more cohesive than the putative scheme here—to defraud Ms. Bergman by way of years of defrauding other victims at other times and in other jurisdictions.  In United States v. Meredith, 370 F. App'x 930 (10th Cir. 2010) (unpublished), we affirmed a restitution order requiring a defendant to make restitution for counts where he did not directly cause loss—and for which

he was not a named defendant—but where the government had demonstrated by a preponderance of the evidence that his role as leader of the scheme made him liable. We believe the facts of these cases are inapposite here.

Furthermore, even if we found that these individuals were victims of the wire fraud scheme for which Mr. Kieffer was convicted, the government has failed to offer sufficient evidence of the amount of losses sustained. "[A]bsolute precision" is not required in determining loss amounts, United States v. James, 564 F.3d 1237, 1247 (10th Cir. 2009), and the court "need only make a reasonable estimate of the loss, given the information available," United States v. Masek, 588 F.3d 1283, 1287 (10th Cir. 2009). However, the court here based restitution entirely upon claims asserted in interviews conducted by the FBI with no substantiation in the form of financial records, credit card statements, canceled checks, or any other proof of payment. Many of the individuals the FBI questioned had only vague recollections of losses they claimed. See III R. 23 (testifying that Michael Danton recalled paying Mr. Kieffer somewhere between $25,000 and $43,000—a difference of almost 100%). One individual was not certain whether she had sent money to Mr. Kieffer or another attorney. I R. 47. Another individual, who had suffered a head injury and "had trouble remembering details associated with the case, including his relationship with Kieffer," claimed that he had provided a deed to a parcel of property as payment. Id. at 55. He

could not recall or estimate the value of the property, and the FBI never saw this deed or conducted any investigation to find it. Id.; III R. 41.

Although "[t]he determination of an appropriate restitution amount is by nature an inexact science," United States v. Teehee, 893 F.2d 271, 274 (10th Cir. 1990), under these circumstances it cannot be said that the government proved the alleged victims' actual losses by a preponderance of the evidence. The government has now received two opportunities to offer sufficient proof, and it has failed twice. Kieffer, 681 F.3d at 1171 (10th Cir. 2012). For these reasons, the district court's order of restitution is invalid.

D.      Reassignment of the Case is Not Necessary

Finally, Mr. Kieffer has requested that, upon remand, we assign his case to a different district court judge "to preserve the appearance of justice." Aplt. Br. 46. In determining whether reassignment is appropriate, we consider three factors: (1) whether the original judge could reasonably be expected to have substantial difficulty setting aside previously expressed views determined to be erroneous; (2) whether reassignment would preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. Mitchell v. Maynard, 80 F.3d 1433, 1450 (10th Cir. 1996). Upon consideration of these factors, we find that reassignment is not necessary.

REMANDED with instructions to vacate the First, Third, and Fourth

Amended Judgments and enter a final judgment in accordance with this opinion.


Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge