ORDER AND JUDGMENT *
Gregory A. Phillips, Circuit Judge
This case has gone on far too long. Today, we attempt to end it. Howard Kief-fer long pretended to be an attorney, going so far as to represent a client in a murder trial. When the truth caught up with him, the federal government in two jurisdictions prosecuted him for a host of offenses: mail fraud, wire fraud, false statements, and contempt of court. A tangled web of legal procedure since then has led to six amended judgments and a lack of final resolution in Kieffer’s case. In this latest appeal, we attempt to provide resolution by agreeing with. Kieffer that the latest sua sponte amended judgment by the district court must be vacated and the previous judgment reinstated as final.
I
In 2008, Howard Kieffer was first charged in federal court in North Dakota for mail fraud and making false statements in connection with his practice of pretending to be a lawyer. United States v. Kieffer, 621 F.3d 825, 830 (8th Cir. 2010). After the jury convicted him, the federal district court sentenced him to 51 months in prison *736 and ordered over $150,000 in restitution. Id. at 830-31. In 2010, the Eighth Circuit affirmed Kieffer’s convictions and sentence. Id. at 836. Also in 2010, the government filed a superseding indictment against Kieffer in Colorado for wire fraud, false statements, and contempt and a jury convicted him on all counts. The district court sentenced him to 57 months in prison to run consecutively to his 51-month sentence from the North Dakota case and ordered $152,019 in restitution. United States v. Kieffer (Kieffer I), 681 F.3d 1143, 1146 (10th Cir. 2012). The court also imposed a number of special conditions of supervised release, including close scrutiny of Kieffer’s finances and employment by his probation officer and mandates to ensure that he paid his restitution. On appeal, we affirmed Kieffer’s convictions, but vacated the sentence and remanded for resentencing. Id. at 1147. We also vacated the restitution order for lack of proof, but affirmed one of the special conditions that Kieffer had challenged as unjustifiable.[1] Id. at 1171-72.
At the resentencing hearing in August 2013, the district court sentenced Kieffer to 48 months in prison, a sentence which was now to run concurrently with the 51-month North Dakota sentence, and again imposed special conditions of supervised release. The court also lowered the restitution amount to $120,019. The written First Amended Judgment reflected these oral findings. Kieffer appealed.
Then the wheels began to come off. While that appeal by Kieffer was pending, the district court, acting sua sponte, issued a Second Amended Judgment (which included restitution and the special conditions). Kieffer filed a Petition for Writ of Mandamus with us, asking us to vacate the Second Amended Judgment and reinstate the First. We denied that request, but remanded to the district court because the government agreed that the Second Amended Judgment was flawed—it did not credit Kieffer with the full time served on the North Dakota case—and had moved for a limited remand. In March 2014, on that limited remand, the district court vacated the Second Amended Judgment and issued a Third Amended Judgment (which still included restitution and the special conditions). In April 2014, the district court, again acting sua sponte, tried preemptively to correct another potential error by issuing a Fourth Amended Judgment (which still included restitution and the special conditions).
But the case still refused to go quietly. Kieffer appealed. On appeal, we vacated the First, Third, and Fourth Amended Judgments,[2] and also vacated the ordered restitution for lack of proof. United States v. Kieffer (Kieffer II), 596 Fed.Appx. 653, 655 (10th Cir. 2014) (unpublished). We found that the Third and Fourth Amended Judgments contained substantive alterations of Kieffer’s sentence, authorized neither by our limited remand nor by Federal Rule of Civil Procedure 36’s power to fix clerical errors. Id. at 659-61. And the First Amended Judgment, we found, was inconsistent with the district court’s oral sentencing at the August 2013 resentencing hearing. Id. at 661-62. We thus ordered the district court “to enter a new and final judgment” on remand. Id. at 661. We did not address how the vacatur of the restitution order would affect the imposition of the special conditions of supervised release.
In retrospect, we probably should have, because absent such guidance, the case *737 was destined to return to us once again. In February 2015, the district court entered a Fifth Amended Judgment. This Fifth Amended Judgment no. longer included any restitution. But, notably, it also did not contain any special conditions of supervised release. Instead, under the heading of “Special Conditions of Supervision,” the conditions were gone, replaced by only “None.* ” R. vol. 1 at 595. On its first page, the judgment noted: “(Changes Identified with Asterisks (*)).” Id. at 692. For example, asterisks also accompanied the new date of the judgment (“February 20, 2015*”) and the new restitution amount (“$ 0.00* ”). Id. at 592, 596.
By omitting the special conditions that it had previously imposed and writing “None,* ” it appeared, therefore, as though the district court had intentionally removed them. The removal would have made sense in light of the vacatur of the restitution order: four of the seven conditions explicitly mentioned either “restitution,” “periodic payment obligations,” or “court ordered financial obligation,” and the remaining three arguably were implicitly about restitution because of their concern with the close monitoring of Kieffer’s financial status. Id. at 14. Kieffer appealed the Fifth Amended Judgment on grounds unrelated to the special conditions and we affirmed. United States v. Kieffer (Kieffer III), 638 Fed.Appx. 746 (10th Cir. 2016) (unpublished). The government did not appeal or otherwise act on the absence of the special conditions. The case, then, appeared to be at an end.
But it was not to be. Nine months after we affirmed the Fifth Amended Judgment, the district court, again acting sua sponte, issued a Sixth Amended Judgment. The new judgment contained only one change: the special conditions were back, dutifully marked with asterisks, just as the word “None*” had been when it was added. The reason given for the change was: “Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36).” R, vol. 1 at 614, Kieffer appealed, and so here we are again.
II
In resolving this long procedural history, the primary substantive question is whether the district court had the proper authority under Rule 36 to add the special conditions back into Kieffer’s sentence. Kieffer argues that the district court lacked authority to amend the judgment as drastically as it did. Rule 36 provides that, “After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.” Fed. R. Crim. P. 36. But, as we noted previously in this case, “Rule 36 is narrow, applying only to uncontroversial and non-substantive clerical errors ‘of the sort that a clerk ... might commit, mechanical in nature.’ ” Kieffer II, 596 Fed.Appx. at 660 (quoting United States v. Penson, 526 F.3d 331, 335 (6th Cir. 2008)). Notice to the defendant is not even strictly required for Rule 36 fixes because the error should be so clear on the face of the record as to obviate the need for subsequent adversarial proceedings. Id. The mere existence of this contentious appeal, then, bodes ill for the Rule 36 authorization.
Previous cases dealing with Rule 36 in this circuit also suggest that the district court stretched the Rule’s boundaries too far in this case. District courts have no authority to modify sentences absent Congressional grants to do so. United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). The authority of Rule 36 extends only to fixing clerical errors, not to making substantive modifications, id. at 948-49— though the error need not have been made *738 by a clerk and can be either a wrongful omission or inclusion, United States v. Sides, 16 F.3d 418, 1994 WL 38640, at *2 (10th Cir. 1994) (unpublished table decision). Changing the length of a sentence is a substantive modification beyond the reach of Rule 36, Blackwell, 81 F.3d at 949, as is ordering restitution, United States v. Dando, 287 F.3d 1007, 1010 n.3 (10th Cir. 2002), adjusting restitution liability, United States v. Harris, 982 F.2d 530 (10th Cir. 1992) (unpublished table decision), and, in an echo of this case, removing terms of supervised release from a written judgment, United States v. Tuyen Vu Ngo, 556 Fed.Appx. 752, 754 (10th Cir. 2014) (unpublished).
The standard of review in this circuit for Rule 36 motions is unclear. See, e.g., United States v. Gardner, 601 Fed.Appx. 717, 719-20 (10th Cir. 2015) (unpublished) (“We have found no published Tenth Circuit decisions outlining the proper standard of review for such a claim.”). “Regardless, Rule 36 does not empower a court to substantively modify a sentence.” United States v. Gutierrez, 401 Fed.Appx. 378, 380 (10th Cir. 2010) (unpublished).
Furthermore, earlier in this case, we found that the district court had exceeded the authority of Rule 36 by shortening Kieffer’s sentence. Kieffer II, 596 Fed. Appx. at 660. Rather than merely “correcting] a transcription error” or “the accidental transposition of numbers or the omission of an operative word or phrase,” such a change amounted to a substantive alteration “plainly beyond the scope of Rule 36.” Id. Similarly, we think that the wholesale reintroduction of seven special conditions of supervised release into an amended judgment from which they had previously been expressly removed is closer in nature to a sentence-length, restitution, or supervised-release change than- to something akin to a transcription error.
.Additional circumstances here also strongly suggest that the removal of the conditions was not an error fixable by Rule 36: the Fifth Amended Judgment did not merely omit the special conditions, but replaced them with “None” and an asterisk indicating a change. Furthermore, the va-catur of the restitution order provided a plausible rationale for the removal. So plausible was the removal of the conditions, in fact, that the government raised no objection either during Kieffer’s appeal or in the nine months after we affirmed the Fifth Amended Judgment.[3] The nature of the reintroduction of the supervised-release conditions and the circumstances surrounding it point firmly to its being a substantive change, and thus outside the scope of Rule 36.[4]
III
The government contends that we are making matters too complicated—we should simply follow our established rule that orally pronounced sentences trump written judgments when the two conflict. See, e.g., United States v. Bowen, 527 F.3d 1065, 1080 (10th Cir. 2008). Because the district court’s oral sentencing in August 2013 included the special conditions, the government argues, they survive any omis *739 sion in a later written judgment, and Rule 36 is an appropriate method to restore them. See United States v. Sasser, 974 F.2d 1544, 1561-62 (10th Cir. 1992).
This argument ignores a crucial fact: the restitution order was a significant part of the August 2013 oral sentencing, and highly relevant to the special conditions, and we vacated it. In our cases that discuss the primacy of oral over written sentences, we noted a distinction between our treatment of unambiguous and ambiguous oral sentences. See, e.g., United States v. Barwig, 568 F.3d 852, 855 (10th Cir. 2009); United States v. Villano, 816 F.2d 1448, 1451 (10th Cir. 1987) (en banc). If an oral sentence is unambiguous, it controls; if it is ambiguous, a court may look to the written sentence to help it interpret what was intended. Barwig, 568 F.3d at 855-56. Although the August 2013 oral sentencing was not ambiguous when it was first stated, our subsequent vacatur of a key part of it—the restitution order—made it ambiguous. Given the close connection between restitution and the majority of, and possibly all of, the special conditions, whether the special conditions were still a part of the August 2013 oral sentence was an open question. On remand, the district court had a chance to answer that question and did so: it took out the conditions and marked the change. So when it comes to the special conditions, the oral sentencing no longer controls and cannot serve as a blanket authorization for adjusting the written judgment to match it.
The government also argues that Kief-fer, and now, implicitly, we, “read[] too much into the court’s silence” in the Fifth Amended Judgment. Appellee Br. at 12. But it was far more than silence. As discussed, the special conditions were removed from the space on the written judgment that they had previously occupied and-the word “None” was inserted, with an asterisk to mark a change. We will not weigh in on what we might have held had the conditions simply been absent, but the insertion of the asterisk speaks strongly to an intent to make a substantive change.
The government argues that we are entering the “murky” arena of trying to divine the intentions of the district court, id. (quoting Villano, 816 F.2d at 1453)—some-thing we have previously cautioned against, Barwig, 568 F.3d at 856-57 (“Our jurisprudence leaves no space for undisclosed and unspoken judicial intent.”). But both Barwig and Villano, as we mention above, dealt with written judgments that conflicted with unambiguous oral sentences. Here, our restitution vacatur made the oral sentence’s treatment of the special conditions ambiguous after the fact, so we have no choice but to interpret the intent of the district court at the time of the Fifth Amended Judgment. As discussed, our interpretation finds that the district court meant to remove the special conditions. The Sixth Amended Judgment, therefore, was an impermissible attempt to make a substantive change, not a permissible attempt to correct a clerical error or to undo a deviation from an unambiguous oral sentence.[5]
*740 CONCLUSION
For the reasons stated, we vacate the Sixth Amended Judgment and remand with instructions to reinstate the Fifth Amended Judgment. Appellee’s motion to supplement the record, construed as a motion to take judicial notice, is granted.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P, 32.1 and 10th Cir. R. 32.1.

. The district court had already vacated the Second Amended Judgment.

. In another of its arguments, the government inadvertently highlights the shaky foundation on which the special conditions stood after our vacatur of restitution: the government argues that even if the special conditions tied to restitution were wrongly reimposed, we need not reverse because our vacatur of the restitution order rendered them inert.

. Because we find for Kieffer based on the scope of Rule 36, we need not address his arguments that the Sixth Amended Judgment should be vacated under the law-of-the-case doctrine, and that the special conditions are not substantively justifiable.

. The government also points out that we previously affirmed one of the special conditions—pre-approval of Kieffer’s future employment opportunities—when Kieffer challenged it substantively. Kieffer I, 681 F.3d at 1171-72. We did so even as we vacated the restitution order for the first time. Id. at 1170-71. The government argues that this proves that the conditions were "separate from restitution” and "sustainable without it.” Appellee Br. at 17.
First, that is not necessarily true, because when we first vacated the restitution, we had no reason to believe that the district court would not reinstate a revised version—and in fact, it did just that. Second, we are not reviewing and deciding that substantive issue here. What we are deciding here is squarely *740 procedural: that after the second vacatur of restitution, it was up to the district court on how to handle the special conditions. It decided to remove them, and then much later tried to reintroduce them via Rule 36, which was outside its authority.