LUCERO, Circuit Judge.
In August 2005, Rebecca Barwig was indicted on one count of harboring and concealing a person wanted on an arrest warrant in violation of 18 U.S.C. § 1071 and § 2 as well as one count of making a false statement to a federal law enforcement officer in violation of § 1001. Pursuant to a plea agreement, she pleaded guilty to the false statement charge, which carries a five-year maximum term of imprisonment. § 1001. In exchange, the concealment charge was dismissed. On February 21, 2006, the district court sentenced Bar-wig to two years of probation subject to customary conditions.
A year later, a probation violation report was prepared notifying the court of violations. At a revocation hearing on June 11, 2007, Barwig admitted to certain violations and pleaded no contest to others. It is the resentencing that occurred thereafter which presents the subject matter of this appeal. In formally pronouncing sentence, the district court declared, “I am sentencing Rebecca Barwig to four months of *854 home confinement. She then will go on supervised release for a term of two years.” (Emphasis added).
In early 2008, a second violation report was filed alleging Barwig had violated the terms of the June 2007 sentence. On February 13, 2008, the district court held another revocation hearing at which Barwig pleaded no contest to each allegation in the violation report. The June 2007 sentence was revoked, and Barwig was sentenced to five years’ imprisonment. Barwig appeals the five-year sentence.
At issue is whether Barwig was sentenced to supervised release or probation at the June 2007 hearing. Barwig argues that the sentence was supervised release, and as such, § 3583(e)(3) did not permit the district court to impose more than two years’ imprisonment when it revoked the June 2007 sentence. In response, the government contends that the June 2007 sentence was to a term of probation, not supervised release, and accordingly § 3565(a)(2) authorized a sentence up to the statutory maximum for the underlying conviction, which in this case is five years’ imprisonment under § 1001(a).
We agree with Barwig. Because the court’s formal oral pronouncement of her sentence at the June 2007 hearing unambiguously imposed a term of supervised release, the sentencing court committed plain error by sentencing Barwig to five years’ imprisonment when it revoked the June 2007 sentence in February 2008. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse the district court and remand for resentencing.
I
The oral sentence pronounced by the court in June 2007 is determinative of this appeal. At that hearing, after Barwig admitted to various probation violations and pleaded no contest to others, the district court declared, “I intend to find that you violated your supervised release and to revoke that term.” Next, the district court informed Barwig she could receive five years’ imprisonment. Further, the district court stated, “It’s my intention, Ms. Barwig, to sentence you to ten months of confinement in BOP custody.... That will be followed by one year of supervised release.... ” Expanding on that statement, the district court explained, “I do intend to revoke your probation and sentence you to ten months in confinement.... Reimposition of a one-year term of supervised release is authorized.” Barwig then addressed the district court, said that she was “terribly sorry for [her] mistakes,” and asked the district court to “show [her] mercy and allow [her] to return home to get the counseling [she] need[ed].” She told the court that she no longer used drugs and knew she could change her life if permitted to return home.
In response to Barwig’s plea for mercy, the district judge reconsidered his initial inclination to order incarceration: “Ms. Barwig, I’m going to take a chance on you.... I’m going to sentencing [sic] you to four months home confinement and two years of supervised release on the same terms and conditions.” The district court then formally imposed her sentence:
The Court: Okay. Will you stand? I’ll impose your sentence:
Based upon the violation report, the evidence and the previously-stated findings I am determining that Rebecca Barwig has violated the terms of her probation imposed the [sic] February 21, 2006. I’m revoking that term of probation. I am sentencing Rebecca Barwig to four months of home confinement. She then will go on supervised release for a term of two years....
*855 While on supervised release you’re not to commit another Federal, state or local crime....
One week later, on June 18, 2007, the district court issued a written order entitled “Order Revoking and Reinstating Term of Probation.” The order read: “It is, therefore, by the court considered, ordered, adjudged and decreed that the defendant’s term of supervised release be revoked and reinstated, for a 2 year term of supervised release ... with the same conditions as previously imposed.”
On January 23, 2008, a second violation report was filed alleging Barwig had violated the terms of the June 2007 sentence. On February 13, 2008, the district court held another revocation hearing at which Barwig pleaded no contest to each allegation in the report. Barwig had “violated the terms of supervision imposed on June 11th of 2007,” concluded the district court, “and that term of supervision is revoked.” It then imposed the sentence: “It is the judgment of the court that the defendant is sentenced to the custody of the Bureau of Prisons for five years.”
II
Because Barwig did not raise a § 3583 objection before the district court, we review for plain error. See United States v. Ruiz-Terrazas, 477 F.3d 1196, 1199 (10th Cir.2007). Plain error occurs when “there is (i) error, (n) that is plain, which (iii) affects the defendant’s substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings.” Id. (citation omitted).
A
Our ultimate inquiry is whether the district court erred in imposing the five-year sentence in February 2008. Neither party disputes that if the June 2007 sentence was supervised release, the five-year February 2008 sentence violated § 3583(e). Likewise, neither party contests that if the June 2007 sentence was probation, the district court did not err in imposing the five-year February 2008 sentence.[1] Which, supervised release or probation, is the question.
Our answer is determined in part by the holding that “[t]he sentence orally pronounced from the bench is the sentence.” United States v. Villano, 816 F.2d 1448, 1451 (10th Cir.1987) (en banc). It is undisputed that “an oral pronouncement of sentence from the bench controls over ... written language.” United States v. Marquez, 337 F.3d 1203, 1207 n. 1 (10th Cir. 2003); accord Villano, 816 F.2d at 1450 (“It is a firmly established and settled principle of federal criminal law that an orally pronounced sentence controls over a judgment and commitment order when the two conflict.”). For this reason, only if the orally pronounced sentence is ambiguous may a reviewing court examine a subsequent written order to assist in interpreting the oral sentence. Villano, 816 F.2d at 1451-53. This rule derives from the principle that
[t]he imposition of punishment in a criminal case affects the most fundamental human rights: life and liberty. Sentencing should be conducted with the judge and defendant facing one another *856 and not in secret. It is incumbent upon a sentencing judge to choose his words carefully so that the defendant is aware of his sentence when he leaves the courtroom.
Id. at 1452-53. If appellate courts were to comb the record in search of alternative meanings to a clearly pronounced sentence, we would undercut “important principles that underlie the traditional rule [that the orally announced sentence controls]. The legal status of the oral sentence and the right to be present at sentencing would be diluted by an intent-based approach.” Id. at 1451.
In determining whether an oral sentence is ambiguous, we consider only the words used by the sentencing court in formally pronouncing a sentence. Id. at 1450-53 & 1451 n. 3; see also Fed. R.Crim.P. 35(c) (“ ‘[Sentencing’ means the oral announcement of the sentence.”); United States v. Mendoza, 543 F.3d 1186, 1195 n. 7 (10th Cir.2008) (“A sentence is formally imposed at the point when the district court announces it from the bench ....”); cf. Villano, 816 F.2d at 1453 n. 6 (explaining circumstances that might amount to ambiguity). In Villano, for example, three codefendants were sentenced together at a single hearing. The government claimed an ambiguity because Villa-no’s sentence was inconsistent with those of his two codefendants. 816 F.2d at 1450. In sentencing Villano’s codefendants, the court ordered the sentences on each of three counts to run consecutively. But in sentencing Villano, the court ordered only two of the counts to run consecutively. That same day, the sentencing judge entered a written order stating that all three of Villano’s sentences were to run consecutively. Villano appealed. We reversed. We focused exclusively on the moment when the district court formally imposed the sentence and did not comb the remainder of the sentencing transcript in search of ambiguity.[2] Id. at 1451 & n. 3. Our en banc court concluded that “[t]he words spoken by the district judge [were] not ambiguous.” Id. at 1451. What the sentencing judge said when formally pronouncing the sentence, not what he may have intended, guided the en banc court’s analysis. Id. at 1450-53 & n. 3.
In the instant case, the court’s words in formally imposing Barwig’s sentence at the June 2007 revocation hearing were unambiguous: “I am sentencing Rebecca Bar-wig to four months of home confinement. She then will go on supervised release for a term of two years.... While on supervised release you’re not to commit another Federal, state or local crime.... ” (Emphases added). Because the district court clearly and unmistakably sentenced Bar-wig to a term of supervised release, those words must control, and the subsequent written order is trumped.[3] Our jurispru *857 dence leaves no space for undisclosed and unspoken judicial intent. Id. at 1453 (“The rule that the oral sentence controls ... avoids the murky area of determining the judge’s intentions.”). Our review of the court’s June 2007 sentence leaves us with no doubt that the district court sentenced Barwig to four months of home confinement followed by two years of supervised release.
B
Despite the clarity of the formal pronouncement of Barwig’s June 2007 sentence, the dissent would search the remainder of the transcript for ambiguity. As noted, toward the beginning of the hearing, the district court told Barwig, “Based upon your admissions and the information that’s contained that’s not been contested in the violation report, I intend to find that you violated your supervised release and to revoke that term,” (emphasis added). As there is no dispute that Barwig was serving probation at the time of the June 2007 hearing, the district court could only have meant: “I intend to find that you violated your [probation] and to revoke that term.” This substitution of “supervised release” for “probation” — in a portion of the hearing addressing the sentence the district court revoked — leads the dissent to perceive ambiguity in the district court’s formal pronouncement of the sentence imposed. Relying on this supposed ambiguity, the dissent endeavors to discern the sentencing judge’s intent by looking to the June 18, 2007, written order.
But the en banc court’s decision in Villano forecloses this approach. As we explained above, our inquiry into whether there was ambiguity in that case ended when we determined that there was no ambiguity in the formal oral imposition of Villano’s sentence.[4] And for good reason. A defendant has the right to be present at *858 sentencing. Fed.R.Crim.P. 43(a)(3) (“[T]he defendant must be present at ... sentencing.”); see also Villano, 816 F.2d at 1451 (“The legal status of the oral sentence and the right to be present at sentencing would be diluted by an intent-based approach.”). If that right is to mean something more than a mere entitlement to be physically present in a courtroom, it must necessarily be that the district court’s unambiguous formal pronouncement of sentence controls. A defendant must be entitled to rely on a judge’s unambiguous words. See Villano, 816 F.2d at 1452-53 (“It is incumbent upon a sentencing judge to choose his words carefully so that the defendant is aware of his sentence when he leaves the courtroom.”).[5]
C
Because the district court imposed supervised release in June 2007, the five-year sentence imposed in February 2008 exceeded the statutory maximum under § 3583(e)(3). A sentence that exceeds the statutory maximum is an illegal sentence, United States v. Gonzalez-Huerta, 403 F.3d 727, 739 n. 10 (10th Cir.2005) (en banc); United States v. Brown, 316 F.3d 1151, 1160 n. 4 (10th Cir.2003), and an illegal sentence is per se reversible even under plain error review. Gonzalez-Huerta, 403 F.3d at 739 n. 10; see also United States v. Brooks, 438 F.3d 1231, 1242 (10th Cir.2006) (“The imposition of an illegal sentence constitutes plain error.”).
Ill
For the reasons stated, we REVERSE Barwig’s five-year sentence and REMAND for resentencing in accordance with this opinion.

. Barwig's underlying conviction for making a false statement to a federal law enforcement officer is a Class D felony. See 18 U.S.C. §§ 1001, 3559(a)(4). By statute, no more than two years' imprisonment is authorized when a defendant convicted of a Class D felony has her supervised release revoked. § 3583(e)(3). On the other hand, when a court revokes probation, it may resentence the defendant up to the statutory maximum, § 3565(a)(2), which in this case is five years' imprisonment, § 1001(a).

. Our reading of Villano differs from that of the dissent. The dissent contends that the ruling in Villano stems solely from an inconsistency between the formal oral sentence and the subsequent written order. See Dissent at 859-60. It then proceeds to conclude that Villano does not address a situation in which the purported ambiguity arose during the sentencing hearing. Id. at 859-60. We disagree. Because the en banc court reaffirmed the longstanding rule that an unambiguous oral sentence controls over a conflicting written order, Villano, 816 F.2d at 1453, Villano necessarily had to decide whether the oral sentence at issue was unambiguous, id. at 1450-51. In the course of deciding that Villano’s sentence was unambiguous, the en banc court did not allow the inconsistency between the sentences of Villano and his codefendants— which arose during the same sentencing hearing — to create an ambiguity in Villano’s oral sentence. Id. at 1451 & n. 3.

. Both sides agree that the June 18, 2007, written order is not a correction to Barwig's sentence as contemplated by Fed.R.Crim.P. 35(a), which authorizes a district court to, *857 "[wjithin 7 days after sentencing, ... correct a sentence that resulted from arithmetical, technical, or other clear error.” Also conceded is that the written order is not a correction of a clerical error pursuant to Rule 36. See Fed.R.Crim.P. 36 (“After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.”).

. Treating the formal oral pronouncement as the sentence is consistent with the practices in other circuits. See, e.g., United States v. Penson, 526 F.3d 331, 334 (6th Cir.2008) (concluding that the district court's formal oral pronouncement unambiguously imposed three concurrent terms of imprisonment of 310 months each, and that the oral sentence controlled over written judgment) (quoting Villano, 816 F.2d at 1451 & 1452); United States v. Bonanno, 146 F.3d 502, 511-12 (7th Cir. 1998) (acknowledging that an unambiguous formal oral sentence would generally control over later written judgment but declining to enforce the oral sentence in the government’s favor because the government did not appeal (quoting Villano, 816 F.2d at 1451)); United States v. Moyles, 724 F.2d 29, 29-30 (2d Cir. 1983) (considering only the formal oral pronouncement of sentence and holding that it was internally ambiguous).
The majority of out-of-circuit decisions relied upon by the dissent are not to the contraiy. See Dissent at 860-61 (citing United States v. Marchese, 87 Fed.Appx. 276, 278 (3d Cir.2004) (unpublished); United States v. Osborne, 345 F.3d 281, 283 n. 1 (4th Cir.2003); United States v. Pagan, 785 F.2d 378, 380 (2d Cir. 1986)). In Marchese, the court expressly reaffirmed its rule that "[wjhere the oral sentence is merely ambiguous, ... the oral sentencing order must be construed in the context of the overall proceeding.” 87 Fed.Appx. at 278 (quotation omitted). It concluded that the formal oral sentence was facially ambiguous. Id. Marchese then applied the approach it articulated: Only after discerning facial ambiguity in the formal oral pronouncement did the court look to the hearing as a whole and the subsequent written order. Id. at 278-79.
Similarly, in Osborne, the ambiguity resulted from the formally pronounced oral sentence that was below the then-mandatory Guidelines range. 345 F.3d at 283 n. 1. Be *858 cause the district court had not departed downward' — the only way to give a below-Guidelines sentence at the time — the oral sentence was unauthorized and, under the Fourth Circuit's approach, ambiguous. Id. (citing United States v. Brown, 47 Fed.Appx. 305, 314-15 (6th Cir.2002) (unpublished)). Finally, in Pagan, the Second Circuit held that the “oral pronouncement ... taken as a whole, was ambiguous,” 785 F.2d at 380 (emphasis added). It did not hold that the hearing, taken as a whole, was ambiguous. Id.
We acknowledge, however, that the Ninth Circuit appears to take a different approach. See United States v. Brown, 1999 WL 369902, at *4 (9th Cir.1999) (unpublished). In Fenner v. U.S. Parole Commission, for example, the Ninth Circuit held, "The intent of the sentencing court must guide any retrospective inquiry into the term and nature of a sentence. Thus, to the extent that there is an ambiguity in the sentence, we properly may consider the sentencing judge’s subjective intent.” 251 F.3d 782, 786 (9th Cir.2001). By contrast, in Villano, we rejected inquiry into a sentencing judge's subjective intent to ensure that "the defendant is aware of his sentence when he leaves the courtroom.” 816 F.2d at 1451-53.

. The dissent speculates that our decision will lead to unintended or unjust results. Dissent at 860. Yet, a clear rule serves the interests of all parties. Villano laid down a clear rule: The formal oral pronouncement of sentence controls. Villano, 816 F.2d at 1451 & n. 3. If there be an issue with that pronouncement, either party must immediately seek clarification. Under Villano, the dissent's hypothetical is easily analyzed. If a court mistakenly pronounces a sentence of "153 months” instead of "135 months,” the defendant knows to immediately call the inconsistency to the court's attention and allow it to correct the mistake. If the numbers in the dissent's hypothetical are flipped, the government knows to immediately call the inconsistency to the court’s attention and allow it to correct the mistake. If for any reason a defendant fails to “speak up,” various procedural vehicles remain by which an error can be corrected. See supra note 3. Trial courts, as well, are on notice that they must choose their words carefully at the time of their oral pronouncement at sentencing.