**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

HOWARD O. KIEFFER,

     Defendant - Appellant.

No. 16-1457
(D.C. No. 1:09-CR-00410-CMA-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

This case has gone on far too long. Today, we attempt to end it. Howard

Kieffer long pretended to be an attorney, going so far as to represent a client in a

murder trial. When the truth caught up with him, the federal government in two

jurisdictions prosecuted him for a host of offenses: mail fraud, wire fraud, false

statements, and contempt of court. A tangled web of legal procedure since then has

led to six amended judgments and a lack of final resolution in Kieffer's case. In this

latest appeal, we attempt to provide resolution by agreeing with Kieffer that the latest

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sua sponte amended judgment by the district court must be vacated and the previous judgment reinstated as final.

I

In 2008, Howard Kieffer was first charged in federal court in North Dakota for mail fraud and making false statements in connection with his practice of pretending to be a lawyer. *United States v. Kieffer*, 621 F.3d 825, 830 (8th Cir. 2010). After the jury convicted him, the federal district court sentenced him to 51 months in prison and ordered over $150,000 in restitution. *Id.* at 830-31. In 2010, the Eighth Circuit affirmed Kieffer's convictions and sentence. *Id.* at 836. Also in 2010, the government filed a superseding indictment against Kieffer in Colorado for wire fraud, false statements, and contempt and a jury convicted him on all counts. The district court sentenced him to 57 months in prison to run consecutively to his 51-month sentence from the North Dakota case and ordered $152,019 in restitution. *United States v. Kieffer* (*Kieffer I*), 681 F.3d 1143, 1146 (10th Cir. 2012). The court also imposed a number of special conditions of supervised release, including close scrutiny of Kieffer's finances and employment by his probation officer and mandates to ensure that he paid his restitution. On appeal, we affirmed Kieffer's convictions, but vacated the sentence and remanded for resentencing. *Id.* at 1147. We also vacated the restitution order for lack of proof, but affirmed one of the special conditions that Kieffer had challenged as unjustifiable.[1] *Id.* at 1171-72.

---

[1] Kieffer had not challenged the other special conditions of supervised release.

2

At the resentencing hearing in August 2013, the district court sentenced Kieffer to 48 months in prison, a sentence which was now to run concurrently with the 51-month North Dakota sentence, and again imposed special conditions of supervised release. The court also lowered the restitution amount to $120,019. The written First Amended Judgment reflected these oral findings. Kieffer appealed.

Then the wheels began to come off. While that appeal by Kieffer was pending, the district court, acting sua sponte, issued a Second Amended Judgment (which included restitution and the special conditions). Kieffer filed a Petition for Writ of Mandamus with us, asking us to vacate the Second Amended Judgment and reinstate the First. We denied that request, but remanded to the district court because the government agreed that the Second Amended Judgment was flawed—it did not credit Kieffer with the full time served on the North Dakota case—and had moved for a limited remand. In March 2014, on that limited remand, the district court vacated the Second Amended Judgment and issued a Third Amended Judgment (which still included restitution and the special conditions). In April 2014, the district court, again acting sua sponte, tried preemptively to correct another potential error by issuing a Fourth Amended Judgment (which still included restitution and the special conditions).

But the case still refused to go quietly. Kieffer appealed. On appeal, we vacated the First, Third, and Fourth Amended Judgments,[2] and also vacated the

_____

[2] The district court had already vacated the Second Amended Judgment.

3

ordered restitution for lack of proof. *United States v. Kieffer* (*Kieffer II*), 596 F. App'x 653, 655 (10th Cir. 2014) (unpublished). We found that the Third and Fourth Amended Judgments contained substantive alterations of Kieffer's sentence, authorized neither by our limited remand nor by Federal Rule of Civil Procedure 36's power to fix clerical errors. *Id.* at 659-61. And the First Amended Judgment, we found, was inconsistent with the district court's oral sentencing at the August 2013 resentencing hearing. *Id.* at 661-62. We thus ordered the district court "to enter a new and final judgment" on remand. *Id.* at 661. We did not address how the vacatur of the restitution order would affect the imposition of the special conditions of supervised release.

In retrospect, we probably should have, because absent such guidance, the case was destined to return to us once again. In February 2015, the district court entered a Fifth Amended Judgment. This Fifth Amended Judgment no longer included any restitution. But, notably, it also did not contain any special conditions of supervised release. Instead, under the heading of "Special Conditions of Supervision," the conditions were gone, replaced by only "None.*" R. vol. 1 at 595. On its first page, the judgment noted: "*(Changes Identified with Asterisks (*)).*" *Id.* at 592. For example, asterisks also accompanied the new date of the judgment ("February 20, 2015*") and the new restitution amount ("$ 0.00*"). *Id.* at 592, 596.

By omitting the special conditions that it had previously imposed and writing "None,*" it appeared, therefore, as though the district court had intentionally removed them. The removal would have made sense in light of the vacatur of the

4

restitution order: four of the seven conditions explicitly mentioned either "restitution," "periodic payment obligations," or "court ordered financial obligation," and the remaining three arguably were implicitly about restitution because of their concern with the close monitoring of Kieffer's financial status. *Id.* at 14. Kieffer appealed the Fifth Amended Judgment on grounds unrelated to the special conditions and we affirmed. *United States v. Kieffer* (*Kieffer III*), 638 F. App'x 746 (10th Cir. 2016) (unpublished). The government did not appeal or otherwise act on the absence of the special conditions. The case, then, appeared to be at an end.

But it was not to be. Nine months after we affirmed the Fifth Amended Judgment, the district court, again acting sua sponte, issued a Sixth Amended Judgment. The new judgment contained only one change: the special conditions were back, dutifully marked with asterisks, just as the word "None*" had been when it was added. The reason given for the change was: "Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)." R. vol. 1 at 614. Kieffer appealed, and so here we are again.

II

In resolving this long procedural history, the primary substantive question is whether the district court had the proper authority under Rule 36 to add the special conditions back into Kieffer's sentence. Kieffer argues that the district court lacked authority to amend the judgment as drastically as it did. Rule 36 provides that, "After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record

5

arising from oversight or omission." Fed. R. Crim. P. 36. But, as we noted previously in this case, "Rule 36 is narrow, applying only to uncontroversial and non-substantive clerical errors 'of the sort that a clerk . . . might commit, mechanical in nature.'" *Kieffer II*, 596 F. App'x at 660 (quoting *United States v. Penson*, 526 F.3d 331, 335 (6th Cir. 2008)). Notice to the defendant is not even strictly required for Rule 36 fixes because the error should be so clear on the face of the record as to obviate the need for subsequent adversarial proceedings. *Id.* The mere existence of this contentious appeal, then, bodes ill for the Rule 36 authorization.

Previous cases dealing with Rule 36 in this circuit also suggest that the district court stretched the Rule's boundaries too far in this case. District courts have no authority to modify sentences absent Congressional grants to do so. *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996). The authority of Rule 36 extends only to fixing clerical errors, not to making substantive modifications, *id.* at 948-49— though the error need not have been made by a clerk and can be either a wrongful omission or inclusion, *United States v. Sides*, 16 F.3d 418 at *2 (10th Cir. 1994) (unpublished table decision). Changing the length of a sentence is a substantive modification beyond the reach of Rule 36, *Blackwell*, 81 F.3d at 949, as is ordering restitution, *United States v. Dando*, 287 F.3d 1007, 1010 n.3 (10th Cir. 2002), adjusting restitution liability, *United States v. Harris*, 982 F.2d 530 (10th Cir. 1992) (unpublished table decision), and, in an echo of this case, removing terms of supervised release from a written judgment, *United States v. Tuyen Vu Ngo*, 556 F. App'x 752, 754 (10th Cir. 2014) (unpublished).

6

The standard of review in this circuit for Rule 36 motions is unclear. *See, e.g.*, *United States v. Gardner*, 601 F. App'x 717, 719-20 (10th Cir. 2015) (unpublished) ("We have found no published Tenth Circuit decisions outlining the proper standard of review for such a claim."). "Regardless, Rule 36 does not empower a court to substantively modify a sentence." *United States v. Gutierrez*, 401 F. App'x 378, 380 (10th Cir. 2010) (unpublished).

Furthermore, earlier in this case, we found that the district court had exceeded the authority of Rule 36 by shortening Kieffer's sentence. *Kieffer II*, 596 F. App'x at 660. Rather than merely "correct[ing] a transcription error" or "the accidental transposition of numbers or the omission of an operative word or phrase," such a change amounted to a substantive alteration "plainly beyond the scope of Rule 36." *Id.* Similarly, we think that the wholesale reintroduction of seven special conditions of supervised release into an amended judgment from which they had previously been expressly removed is closer in nature to a sentence-length, restitution, or supervised-release change than to something akin to a transcription error.

Additional circumstances here also strongly suggest that the removal of the conditions was not an error fixable by Rule 36: the Fifth Amended Judgment did not merely omit the special conditions, but replaced them with "None" and an asterisk indicating a change. Furthermore, the vacatur of the restitution order provided a plausible rationale for the removal. So plausible was the removal of the conditions, in fact, that the government raised no objection either during Kieffer's appeal or in the

7

nine months after we affirmed the Fifth Amended Judgment.[3] The nature of the reintroduction of the supervised-release conditions and the circumstances surrounding it point firmly to its being a substantive change, and thus outside the scope of Rule 36.[4]

## III

The government contends that we are making matters too complicated—we should simply follow our established rule that orally pronounced sentences trump written judgments when the two conflict. *See, e.g.*, *United States v. Bowen*, 527 F.3d 1065, 1080 (10th Cir. 2008). Because the district court's oral sentencing in August 2013 included the special conditions, the government argues, they survive any omission in a later written judgment, and Rule 36 is an appropriate method to restore them. *See United States v. Sasser*, 974 F.2d 1544, 1561-62 (10th Cir. 1992).

This argument ignores a crucial fact: the restitution order was a significant part of the August 2013 oral sentencing, and highly relevant to the special conditions, and we vacated it. In our cases that discuss the primacy of oral over written sentences, we noted a distinction between our treatment of unambiguous and ambiguous oral

---

[3] In another of its arguments, the government inadvertently highlights the shaky foundation on which the special conditions stood after our vacatur of restitution: the government argues that even if the special conditions tied to restitution were wrongly reimposed, we need not reverse because our vacatur of the restitution order rendered them inert.

[4] Because we find for Kieffer based on the scope of Rule 36, we need not address his arguments that the Sixth Amended Judgment should be vacated under the law-of-the-case doctrine, and that the special conditions are not substantively justifiable.

8

sentences. *See, e.g.*, *United States v. Barwig*, 568 F.3d 852, 855 (10th Cir. 2009); *United States v. Villano*, 816 F.2d 1448, 1451 (10th Cir. 1987) (en banc). If an oral sentence is unambiguous, it controls; if it is ambiguous, a court may look to the written sentence to help it interpret what was intended. *Barwig*, 568 F.3d at 855-56. Although the August 2013 oral sentencing was not ambiguous when it was first stated, our subsequent vacatur of a key part of it—the restitution order—made it ambiguous. Given the close connection between restitution and the majority of, and possibly all of, the special conditions, whether the special conditions were still a part of the August 2013 oral sentence was an open question. On remand, the district court had a chance to answer that question and did so: it took out the conditions and marked the change. So when it comes to the special conditions, the oral sentencing no longer controls and cannot serve as a blanket authorization for adjusting the written judgment to match it.

The government also argues that Kieffer, and now, implicitly, we, "read[] too much into the court's silence" in the Fifth Amended Judgment. Appellee Br. at 12. But it was far more than silence. As discussed, the special conditions were removed from the space on the written judgment that they had previously occupied and the word "None" was inserted, with an asterisk to mark a change. We will not weigh in on what we might have held had the conditions simply been absent, but the insertion of the asterisk speaks strongly to an intent to make a substantive change.

The government argues that we are entering the "murky" arena of trying to divine the intentions of the district court, *id.* (quoting *Villano*, 816 F.2d at 1453)—

9

something we have previously cautioned against, *Barwig*, 568 F.3d at 856-57 ("Our jurisprudence leaves no space for undisclosed and unspoken judicial intent."). But both *Barwig* and *Villano*, as we mention above, dealt with written judgments that conflicted with unambiguous oral sentences. Here, our restitution vacatur made the oral sentence's treatment of the special conditions ambiguous after the fact, so we have no choice but to interpret the intent of the district court at the time of the Fifth Amended Judgment. As discussed, our interpretation finds that the district court meant to remove the special conditions. The Sixth Amended Judgment, therefore, was an impermissible attempt to make a substantive change, not a permissible attempt to correct a clerical error or to undo a deviation from an unambiguous oral sentence.[5]

---

[5] The government also points out that we previously affirmed one of the special conditions—pre-approval of Kieffer's future employment opportunities—when Kieffer challenged it substantively. *Kieffer I*, 681 F.3d at 1171-72. We did so even as we vacated the restitution order for the first time. *Id.* at 1170-71. The government argues that this proves that the conditions were "separate from restitution" and "sustainable without it." Appellee Br. at 17.

First, that is not necessarily true, because when we first vacated the restitution, we had no reason to believe that the district court would not reinstate a revised version—and in fact, it did just that. Second, we are not reviewing and deciding that substantive issue here. What we are deciding here is squarely procedural: that after the second vacatur of restitution, it was up to the district court on how to handle the special conditions. It decided to remove them, and then much later tried to reintroduce them via Rule 36, which was outside its authority.

**CONCLUSION**

For the reasons stated, we vacate the Sixth Amended Judgment and remand with instructions to reinstate the Fifth Amended Judgment. Appellee's motion to supplement the record, construed as a motion to take judicial notice, is granted.

Entered for the Court

Gregory A. Phillips
Circuit Judge

*United States v. Kieffer*, No. 16-1457
**BACHARACH**, J., dissenting.

This appeal grew out of a discrepancy between the oral
pronouncement of a sentence and the written judgment. The district court
attributed the discrepancy to a clerical error and amended the written
judgment to conform to the oral pronouncement. The defendant (Mr.
Howard Kieffer) argues that the discrepancy was instead the result of an
intentional, substantive change to the sentence. The majority agrees with
Mr. Kieffer; respectfully, I do not.

1.      **The district court reinserts seven financial conditions that were
        included in the oral pronouncement of the sentence.**

When imposing the sentence, the district court required restitution
and imposed seven special conditions of supervised release related to
financial activities.[1] In a prior appeal, Mr. Kieffer challenged the

---

[1]     These conditions were:

1.      The defendant shall not incur new credit charges or open
        additional lines of credit without the approval of the probation
        officer, unless the defendant is in compliance with the periodic
        payment obligations imposed pursuant to the Court's judgment
        and sentence.

2.      The defendant is to provide the probation officer access to any
        requested financial information.

3.      As directed by the probation officer, the defendant shall apply
        any monies received from income tax refunds, lottery winnings,
        inheritances, judgments, and any anticipated or unexpected

requirement for restitution. We concluded that the restitution requirement was invalid. *United States v. Kieffer*, 596 F. App'x 653, 664-66 (10th Cir. 2014) (unpublished).

In that appeal, Mr. Kieffer did not say anything about the seven financial conditions, and neither did we. Nonetheless, after we decided the appeal, the district court deleted not only the restitution requirement but also the seven financial conditions. This deletion created a discrepancy between the orally pronounced terms and the written judgment. The district

---

financial gains to the outstanding court ordered financial obligation in this case.

4.   Any employment or business ventures by the defendant must be approved in advance by the probation officer.

5.   Any unpaid restitution balance upon release from incarceration shall be paid in monthly installment payments during the term of supervised release. The monthly installment payment will be calculated as at least 10 percent of the defendant's gross monthly wages.

6.   The defendant shall make payment on the restitution obligation that remains unpaid at the commencement of supervised release. Within 60 days of release from confinement, the defendant shall meet with the probation officer to develop a plan for the payment of restitution. This plan will be based upon the defendant's income and expenses. The plan will be forwarded to the court for review and approval.

7.   The defendant shall document all income or compensation generated or received from any source and provide such information to the probation officer as requested.

R. vol. 1, at 14.

2

court later acted sua sponte, removing that discrepancy by amending the written judgment to reinsert the seven financial conditions.[2] In reinserting these conditions, the court explained that the previous version of the judgment had contained a "Clerical Mistake." R. vol. 1, at 614.

## 2. The district court appropriately corrected a clerical error involving the omission of the seven financial conditions.

In reinserting the seven financial conditions, the district court set out to conform the written judgment to the orally pronounced terms. To do so, the court invoked Federal Rule of Criminal Procedure 36. Rule 36 provided the court with the authority to correct this clerical error. *See United States v. Sasser*, 974 F.2d 1544, 1561-62 (10th Cir. 1992); *see also United States v. Kieffer*, 596 F. App'x 653, 660 (10th Cir. 2014) (unpublished) ("While Rule 36 does not give a court authority to substantively change a defendant's sentence, it authorizes amendment to a written judgment to bring it into conformity with an orally pronounced sentence.").

But Mr. Kieffer argues that the discrepancy did not constitute a clerical error. In his view, the district court intentionally removed the conditions after our court had struck down the restitution requirement. The government disagrees, arguing that the deletion of these conditions was inadvertent and that the district court could correct its mistake by

---

[2] When reinserting the conditions, the district court made some minor wording and organizational changes. These changes are immaterial to the outcome.

3

conforming the written judgment to the conditions that had been orally announced. Resolution turns on whether the omission of the seven financial conditions was inadvertent.

The majority agrees with Mr. Kieffer, concluding that the district court had intended to delete these conditions. For this conclusion, the majority reasons that

- all of the seven financial conditions had arguably been designed to facilitate the restitution order and

- once the restitution order was deleted, the district court concluded that the seven financial conditions should be removed.

I respectfully disagree with this reasoning.

In the absence of the district court's explanation, Mr. Kieffer's theory would have been plausible. Under his theory, the district court intentionally deleted the seven financial conditions because of their connection to the invalidated restitution order. If the deletion had been intentional, the correction of the written judgment would have constituted a substantive revision of the sentence.

But the government's theory would also have been plausible: that the district court had deleted the seven financial conditions by accident. It is quite possible that no one thought to address the seven financial conditions after our court had invalidated the restitution requirement. After all, our court didn't mention the seven financial conditions and Mr. Kieffer didn't

4

ask the district court to rescind these conditions. Without any such request by Mr. Kieffer, there is little reason to think that the district court consciously decided to remove the seven financial conditions. If the deletion were not a conscious decision, the district court's correction of the written judgment would have constituted a perfectly appropriate use of Rule 36.

So, which side is right about what the district court intended? Our only clue is what the district court said: that the change was necessary because of a "Clerical Mistake." R. vol. 1, at 614. The mistake was "clerical" only if it was inadvertent, which is consistent with the government's explanation and inconsistent with Mr. Kieffer's.

Mr. Kieffer's explanation would require us to assume that the district court was confused about what would constitute a clerical mistake.[3] We lack any basis for such an assumption. In fact, before the district court reinserted the seven financial conditions, our court had explained the types of errors that can be corrected under Rule 36. *See United States v. Kieffer*, 596 F. App'x 653, 660 (10th Cir. 2014) (unpublished). We have no reason to think that the district court ignored or misread our explanation.

---

[3] Absent evidence to the contrary, we cannot conclude that the district court was being dishonest when it said that the change was necessary because of a clerical mistake. *See Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1301 (10th Cir. 2006) ("[I]n the absence of evidence to the contrary, we must presume that courts will follow the law.").

* * *

The district court indicated that the omission was a mere clerical error, and we have no reason to doubt the district court. Thus, the district court was entitled to correct the omission under Rule 36.

## 3. I would reject Mr. Kieffer's policy argument.

Mr. Kieffer also purports to apply the law-of-the-case doctrine. But Mr. Kieffer is actually presenting a policy argument:

> Presumably recognizing that the special conditions of supervised release it had previously ordered were no longer justified absent the obligation on Mr. Kieffer to pay any restitution, the district court did not include any special conditions in the [written judgment] . . . . The government did not appeal the [judgment]. On Mr. Kieffer's appeal [of that judgment], . . . this Court affirmed the legality and correctness of [that written judgment]. Allowing the district court to further amend the judgment in this case would reduce incentives on the district court and the government to put their best effort into crafting judgments and deciding whether to appeal them, respectively. It would also waste judicial resources and result in unnecessary further delay in a case that has already been protracted due to the district court's previous sentencing errors and sua sponte issuance of multiple invalid amended judgments. Most importantly, allowing the district court to further amend the judgment in this case would contribute to the gradual undermining of public confidence in the judiciary.

Appellant's Opening Br. at 10-11 (citation omitted).[4] Through this argument, Mr. Kieffer apparently assumes that the prior deletion of the

---

[4] Notably, Mr. Kieffer does not argue that our court had directed the district court to remove the financial conditions. Rather, Mr. Kieffer states that the district court "[p]resumably recogniz[ed] that the [financial

6

seven financial conditions had been intentional. For the reasons discussed above, I would reject this assumption. *See* Part 2, above.

It is not clear whether Mr. Kieffer's policy argument is based wholly on this assumption. For the sake of argument, we may assume that Mr. Kieffer's argument does not hinge on this characterization. Even with that assumption, I would reject Mr. Kieffer's argument for two reasons.

First, we cannot rely on policy considerations to jettison the district court's authority to correct clerical errors under Rule 36. Policy considerations cannot override this rule.

Second, Mr. Kieffer's policy argument is unpersuasive. Mr. Kieffer contends that "allowing the district court to further amend the judgment in this case would contribute to the gradual undermining of public confidence in the judiciary." Appellant's Opening Br. at 11. But forbidding the court from correcting a clerical error would itself undermine public confidence in the judiciary.

For these reasons, I would reject Mr. Kieffer's policy argument.

### 4. Mr. Kieffer waived his challenge to the continued justification for the seven financial conditions.

Mr. Kieffer also argues that the seven financial conditions are no longer justified without an underlying requirement for restitution. But it's

conditions] . . . were no longer justified." Appellant's Opening Br. at 10. As a result, Mr. Kieffer has waived any argument that our court had directed the district court to remove the conditions.

too late for Mr. Kieffer to make this argument. In a prior appeal, Mr. Kieffer had argued that the restitution requirement was not justified. *See* Part 1, above. During that appeal, he could have argued that without a valid requirement for restitution, the seven financial conditions were not justified. But he didn't make this argument in the prior appeal, which constituted a waiver. *See Martinez v. Roscoe*, 100 F.3d 121, 123 (10th Cir. 1996) ("Under the doctrine of law of the case, 'a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.'" (quoting *Capps v. Sullivan*, 13 F.3d 350, 353 (10th Cir. 1993)). In light of the waiver, I would not consider this appellate challenge.

**5.     Mr. Kieffer also waived his challenge to the condition requiring pre-approval of employment and business ventures.**

Alternatively, Mr. Kieffer urges us to vacate this financial condition: "Any employment or business ventures by [Mr. Kieffer] must be approved in advance by the probation officer." R. vol. 1, at 617. But this contention is also waived because it could have been presented in the prior appeal (when Mr. Kieffer challenged the restitution requirement). *See Martinez*, 100 F.3d at 123; Part 1, above. Because this appellate challenge is waived, I would not consider it.

8

**6.    Conclusion**

This appeal turns on a determination of why the district court omitted the seven financial conditions from the written judgment. The district court knew why it had omitted the conditions. The court attributed the omission to a clerical error rather than an intention to rescind these conditions. Why should we doubt the district court about its own intent? I see no reason to do so and would uphold the district court's correction of the clerical error. Because the majority reaches a contrary conclusion, I respectfully dissent.